Delbert O. LEWIS *v.* Lanbert B. WEST, Chairman of the Independent Party of Arkansas, Wayne M. Grommett, Secretary of the Independent Party of Arkansas, W. J. "Bill" McCuen, Arkansas Secretary of State

Skip Cook, *Intervenor*

94-1073                                                     885 S.W.2d 663

Supreme Court of Arkansas
Opinion delivered October 19, 1994

---

*James F. Lane*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Angela S. Jegley*, Senior Asst. Att'y Gen., for cross-appellant W. J. "Bill" McCuen.

*Mackey' & Wills, P.A.*, by: *Frank J. Wills III*, for intervenor Skip Cook.

TOM GLAZE, Justice. On March 29, 1994, the deadline for filing as a party candidate, Delbert O. Lewis presented himself to the Secretary of State to file as an Independent Party of Arkansas (IPA) candidate for governor. The Secretary of State informed Lewis that the IPA was not a qualified political party

as defined under Ark. Code Ann. § 7-1-101(1) (Repl. 1993). Lewis left, and no other person presented himself to file as an IPA candidate for governor. Lewis made no further efforts prior to the May 24 and June 14, 1994 primary elections to be an IPA gubernatorial candidate.

IPA officials, Chairman Lanbert B. West and Secretary Wayne M. Grommett, met with others at a called convention on August 14, 1994. These IPA members agreed to interview certain individuals on August 21, 1994 as possible nominees for governor. Lewis was invited, but did not appear. Skip Cook did appear, and after an interview, he was nominated by the convention to be IPA's candidate for governor. On September 22, 1994, Lewis filed a mandamus action in Pulaski County Circuit Court, seeking an order compelling IPA officials West and Grommett to provide him with a certificate of nomination. Lewis also asked the court to direct the Secretary of State to certify him as IPA's gubernatorial nominee. On September 23, 1994, Cook tendered a nomination certificate with the Secretary of State, reflecting Cook was IPA's nominee for Governor. The Secretary of State conditionally accepted Cook's tendered document. On September 27, 1994, Cook intervened in Lewis's action to contest Lewis's claims, and to seek an order, compelling the Secretary of State to certify Cook as the IPA gubernatorial candidate.

After a trial conducted on September 30, 1994, the trial court held as follows:

(1) The IPA was a political party under Ark. Code Ann. § 7-1-101(1)(A) because its candidate obtained 10.43% of the votes cast for President in the November 1992 General Election.

(2) Because the IPA became a party pursuant to Ark. Code Ann. § 7-1-101, it was not required to file a petition as a "new party" with the Secretary pursuant to Ark. Code Ann. § 7-7-203(g).

(3) The IPA did not become a *qualified* political party until September 19, 1994, at which time it filed the "anticommunist" affidavit required by Ark. Code Ann. § 7-3-108(b).

(4) The IPA, as a recognized and qualified political

party, was not required to hold a primary election in order to have its candidates' names printed on the General Election ballot for November 8, 1994. The court was unable to discover any statutes that required a recognized and qualified political party to hold a party primary. Ark. Code Ann. §§ 7-7-401(d)(1) and 7-7-402(a)(1) provide inferential authority that no primary is required under Arkansas law because those statutes refer to nominations by convention of delegates. The Arkansas Supreme Court, in *Adams* v. *Whittaker*, 210 Ark. 298, 195 S.W.2d 634 (1946), held under prior law that political parties are not required to hold primary elections in order to nominate candidates for office.

(5) Because the IPA did not hold a primary election, no person could file as its candidate on or before the March 29, 1994 filing deadline. Therefore, Lewis did not have a right to file as IPA's gubernatorial candidate on that date even though the Secretary of State should have recognized the IPA as a "party" at that time. Even if the court were to decide that the Secretary of State should have accepted Mr. Lewis' application, Lewis failed to file a political practices pledge required under Ark. Code Ann. § 7-6-102.

(6) After the IPA selected Skip Cook as its gubernatorial nominee on August 21, 1994, and after the IPA filed its oath required by Ark. Code Ann. § 7-3-108 on September 7, 1994, the Secretary of State should have accepted the IPA's certificate of nomination from Mr. Cook as its candidate for Governor. That certificate was timely filed and Mr. Cook did file his political practices pledge on or before April 5, 1994.

◼ The core issue in this appeal concerns the trial court's holding that IPA was not required to hold a primary election. The trial court was correct that, because IPA's Presidential candidate garnered 10.43% of the votes in Arkansas's 1992 November General Election, the IPA is a qualified political party under Ark. Code Ann. § 7-1-101(1)(A)[1]. However, the trial court erred

---

[1] Section 7-1-101(1)(A) provides in relevant part that a "political party" means any group of voters which, at the last preceding general election, polled for its candidate for Governor in the state or nominees for presidential electors at least three percent (3%) of the entire vote cast for the office.

in ruling IPA, as a qualified political party, was not required under Arkansas law to conduct a primary election. In reaching its holding, the trial court relied in part on the case of *Adams* v. *Whittaker*, 210 Ark. 298, 195 S.W.2d 634 (1946), wherein the supreme court stated the following:

> *The present state of the law is that political parties are not required to hold primary elections* to nominate candidates for office. They may do so or not, as the governing authorities of the parties may direct; but if a primary election is held, that election is a legal election, and must be held in conformity with the applicable laws of the state. (Emphasis added.)

While the *Adams* court's statement was a correct analysis of the law in 1946, the General Assembly changed that law in 1957 when it enacted Act 205, Arkansas's Compulsory Primary Act. That Act provided that all political parties shall select their candidates for office through primary election. Section 5 of the Act also made it clear that the Act's purpose was to have party nominations by primary elections rather than by convention.

Cook argues that Act 205 was later specifically repealed by Arkansas's Election Code, Act 465 of 1969, and the compulsory primary language is no longer the law. However, Cook misreads pertinent provisions in Act 465, now compiled in Subchapter 1 captioned Methods of Nomination, and specifically designated as Ark. Code Ann. §§ 7-7-101—105 (Repl. 1993).

Section 7-7-101 largely is a restatement of language found in Section 1 of the 1957 Compulsory Primary Act and provides that the name of no person shall be printed on the ballot in any general or special election in this state as a candidate for election to any office unless the person shall have been certified as a nominee selected pursuant to this subchapter [provisions 7-1-101 through 105]. Section 7-7-102 then follows — again tracking Act 205 language — and reads as follows:

> (a) *Nominees of any political party for* United States Senate, United States House of Representatives, *state*, district, or county *office to be voted upon at a general election shall be certified as having received a majority of the votes cast for the office, or as an unopposed candidate, at*

*a primary election held by the political party* in the manner provided by law.

(b) Nominees of any political party for township or municipal office shall be declared by certification of a primary election as provided in subsection (a) of this section. (Emphasis added.)

The above statutory provisions very clearly require political party nominees in special or general elections to be selected first at a primary election and then certified. Only two exceptions are provided under the election code of Act 465 and those exceptions are found in subchapter provisions §§ 7-7-104 and 7-7-105. These provisions provide the method for selecting party nominees when a vacancy in nomination or in office occurs.

A vacancy in nomination is defined as occurring when the nominee of a political party selected at a primary election shall not be certified because of the nominee's death, resignation, or withdrawal arising subsequent to nomination and preceding the final date for certification of nomination. Ark. Code Ann. § 7-1-101(4) (Repl. 1994).[2] In these circumstances, the political party must select its nominee in one of the three following ways: (1) convention of delegates, (2) special primary election or (3) petition of electors.

The 1989 Election Code provided for alternative methods for political parties to select a party nominee when its nominee, for legal reason, has vacated his or her nomination, and election-time constraints caused by the forthcoming general or special election make it impossible for the political party to select another nominee by primary election.

The reason for allowing alternative methods for selecting party nominees when vacancy in nomination occurs applies with equal force to a situation where a vacancy in office occurs. Under Code provision § 7-1-105(5), a vacancy in office occurs where a person is elected at a general or special election but, because of death, resignation, or other good and legal cause, he or she is

---

[2] Section 7-1-104(4) also allows such vacancy in nomination to occur where other good and legal cause may exist.

unable to enter office.[3] If, for example, a person dies immediately after the November general election, political parties would find it impossible to plan and conduct a primary election under applicable primary election laws, and there still be time to hold a special election to fill the vacancy in office before the following January — the month when the elected officer takes office.

In sum, Arkansas's Election Code through the foregoing provisions requires political parties to hold primary election except where a vacancy in nomination or vacancy in office exists.[4] Neither of those two situations is present here.

Because Cook was selected by convention, not by party primary held by the IPA, the trial court erred in ordering the Secretary of State to certify Cook as IPA's candidate for governor. Therefore, we reverse and remand that part of the trial court's decision.

We must now dispose of Lewis's argument, since Lewis, all along, has contended IPA's nominees were required to be selected by party primary. As previously mentioned, Lewis appeared before the Secretary of State to file as the IPA gubernatorial candidate, but the Secretary of State would not accept Lewis's filing. It is undisputed that, at the time set by law for filing for office as a party candidate, the IPA had promulgated no party rules, had no plans to conduct a primary and had established no ballot fees for filing for any offices.

Lewis testified that, while he appeared before the Secretary of State to file as an IPA candidate for governor, he never tendered any documents indicating he had satisfied IPA candidate requirements for eligibility or ballot fees. Ark. Code Ann. § 7-7-301 (Repl. 1993). Nor did he timely file a political practice pledge with the Secretary of State as required under Ark. Code Ann. § 7-6-102(e)(2)(B) (Repl. 1993). This failure, alone,

---

[3]Vacancy in office is defined under this section to include other situations not pertinent here.

[4]This construction of the Code is also consistent with Section 5 of Amendment 29 to the Arkansas Constitution which provides only the names of candidates for office nominated by an organized political party at a convention of delegates, or by a majority of all the votes cast for candidates for the office in a primary election, or by petitions of electors as provided by law, may be placed on the ballot in any election.

is reason to prevent his name from appearing on the ballot. *See also Stillinger* v. *Rector*, 253 Ark. 982, 490 S.W.2d 109 (1973).

■■ Other important reasons dictate that Lewis's name should not appear on the ballot, not the least of which is IPA's apparent decision not to hold a primary election. Obviously, if both Lewis and Cook (or any two candidates) had asked the Secretary of State to allow them to file as candidates to be the IPA nominee for governor (or any other state office), and the Secretary of State had accepted their filings, who would have underwritten and conducted the IPA primary election for those contested races?[5] If Lewis had seriously believed he was entitled to have the Secretary of State accept his filing but the Secretary of State refused it, his remedy was to file a petition for mandamus and declaratory relief, as this court has previously held in *State* v. *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 175 (1989). And because the provisions of elections laws are only mandatory if enforcement is sought before the election, he should have sought his relief before, not after, the 1994 primary elections. *See Stillinger*, 253 Ark. 982, 490 S.W.2d 109.

In conclusion, we affirm the trial court's decision, dismissing Lewis's petition for mandamus. The mandate is ordered issued within five days from the filing of this opinion unless a petition for rehearing is filed.

---

[5]Lewis argues that he was the only person filing as an IPA candidate for governor, and as an unopposed candidate, his name, by law, was not required to be placed on the primary ballot. In other words, IPA's failure to hold and conduct an actual primary, he says, should not be used to keep him from being IPA's primary elected, certified gubernatorial candidate. We simply find no merit in such an argument, mainly because the contention totally ignores the undisputed fact that IPA was required to hold a primary election, and it did nothing under applicable primary election provisions to conduct a primary.