INDEPENDENT PARTY OF ARKANSAS;
Lanbert B. West, Chairman of the Independent Party of Arkansas; Wayne Grommet, Secretary of the Independent Party of Arkansas; Skip Cook, Gubernatorial Candidate; and Keith Carle, Land Commissioner Candidate, Plaintiffs,

v.

Secretary of State Sharon PRIEST, in her official capacity, Defendant.

No. LR–C–94–762.

United States District Court,
E.D. Arkansas,
Western Division.

Nov. 17, 1995.

A.J. Kelly, Little Rock, Arkansas, for plaintiffs.

Timothy Gauger and Ann Purvis, Little Rock, Arkansas, for defendant.

## ORDER

WILSON, District Judge.

Plaintiffs filed suit in district court against Arkansas Secretary of State Sharon Priest pursuant to 42 U.S.C. § 1983. Plaintiffs assert that the Arkansas election laws, as they existed in 1994, denied them due process of the law and equal protection of the laws. The positions of Plaintiffs and Defendant were supported by excellent briefs and oral arguments.

## BACKGROUND

The Independent Party of Arkansas (IPA) is a political group that was previously recognized as a political party by Arkansas law. The IPA garnered 10.43% of the Arkansas votes in the 1992 presidential election, when Ross Perot was the Party's presidential candidate. Under Arkansas law, this enabled the group to become a political party. However, to maintain its political party status, the IPA had to receive at least 3% of the votes cast in the state gubernatorial election in 1994. On March 29, 1994 Delbert Lewis attempted to file as the IPA's gubernatorial nominee. His attempted filing was denied because the Secretary of State did not believe that the IPA was a "political party" under Ark.Code Ann. § 7–1–101(1).

On June 9, 1994, the Attorney General of Arkansas informed the Secretary of State that the IPA *was* a "political party" under Ark.Code Ann. § 7–1–101 because the IPA had obtained 10.43% of the Arkansas votes cast in the 1992 presidential election. However, the Attorney General determined that the IPA would not be "qualified" as a political party until it filed its "anti-communist oath" pursuant to Ark.Code Ann. § 7–3–108.

In August of 1994, the IPA selected Skip Cook as its gubernatorial nominee. The IPA filed its "anti-communist" oath on September 7, 1994. On September 23, 1994, Mr. Cook tendered his certificate of nomination to the Secretary of State. Secretary of State McCuen accepted the certificates only conditionally because he believed that the filings were not timely.[1]

On September 22, 1994, Delbert Lewis filed a petition for a writ of mandamus in Pulaski County Circuit Court to compel the Secretary of State to accept his filing as candidate for governor. On September 27, 1994, Skip Cook moved to intervene to contest Lewis' claims. On September 29, 1994 Cook filed an answer and cross-claim asking the court to compel the Secretary of State to certify him as the IPA gubernatorial nominee. After a hearing was held on September 30, 1994, the circuit court found the following:

(1) The IPA was a political party pursuant to Ark.Code Ann. § 7–1–101(1)(A) because it obtained 10.43% of the votes for its presidential candidate in the November 1992 election.

(2) Because the IPA became a political party pursuant to Ark.Code Ann. § 7–1–101, it did not have to file a petition as a "new party" with the Secretary of State under Ark.Code Ann. § 7–7–203.

(3) The IPA did not become a "qualified" political party until September 7, 1994 when it filed its anti-communist oath pursuant to Ark.Code Ann. § 7–3–108.

(4) As a recognized and qualified political party, the IPA was not required to hold a primary election to place its candidates on the general election ballot for November of 1994.

(5) No person could file as IPA's candidate on or before the March 29, 1994 filing deadline because the IPA did not hold a party primary. Therefore, Delbert Lewis had no right to file as the IPA's gubernatorial candidate, even though the Secretary of State should have recognized the IPA as a party at that time.

(6) After Skip Cook was selected as the IPA's gubernatorial nominee on August 21, 1994, and after the IPA filed its "anti-communist oath," the Secretary of State should have accepted the IPA's certificate of nomination for Mr. Cook as its candidate. His certificate of nomination was timely filed pursuant to Ark.Code Ann. § 7–7–203(k)(1). *Lewis v. West,* 318 Ark. 334, 336–337, 885 S.W.2d 663, 664 (1994).

The circuit court judge then ordered the Secretary of State to include Mr. Cook's name as the IPA's candidate for governor on the November 1994 general election ballot. The Arkansas Supreme Court reversed the order, concluding that the IPA was required

---

1. Under Ark.Code Ann. § 7–7–102, unless a candidate is unopposed, a political party must certify that its candidate received a majority of the votes cast for the particular office at that party's primary election. Since Delbert Lewis desired the IPA's nomination, Skip Cook was not unopposed. Therefore, the IPA was required to hold a primary election. In 1994, the deadline for a party to file its party primary nominees with the Secretary of State was March 29th.

to conduct a party primary pursuant to the Ark.Code Ann. § 7–7–102.

In light of the Arkansas Supreme Court's decision, the circuit court subsequently entered an order denying Cook's cross-complaint for mandamus and declaratory relief. The court concluded that: (1) the IPA was a qualified political party; (2) however, the IPA was required to conduct a general primary election in 1994; and (3) because the IPA did not conduct party primary elections during 1994, Skip Cook could not be added to the general election ballot by the IPA or by the Secretary of State.

The present suit was filed soon after the circuit court's order was entered. In their complaint, Plaintiffs allege that the election laws of Arkansas, as they applied to the IPA and its candidates in the 1994 election, denied them due process of law and equal protection of the laws. Specifically, Plaintiffs allege that the application of the Arkansas primary election laws operated to unconstitutionally restrict the IPA's candidates access to the 1994 election ballots.

Plaintiffs assert that a consequence of the application of the Arkansas primary election laws was to prevent the IPA from obtaining any percentage of the electoral vote in a state-wide election in 1994, thereby causing the party to lose its status as a "political party" under Arkansas law. To regain its political party status under Ark.Code Ann. § 7–1–101, the IPA must obtain for each of its candidates the signatures of at least 3% of the electors in the previous election in order to have its candidates appear on the 1996 election ballots.

On June 15, 1995 the Plaintiffs filed a motion for partial summary judgment. On September 29, 1995, the Plaintiffs filed a motion for a preliminary injunction because a special election had been called to replace the late L.L. "Doc" Bryan as a member of the Arkansas House of Representatives from District 30. A preferential primary for this special election was scheduled for October 3, 1995, with a primary run-off election scheduled for October 24, 1995. The general election was scheduled for November 7, 1995. In their Motion for Preliminary Injunction, Plaintiffs sought the opportunity to place a candidate on the ballot in the special election without collecting the requisite petition signatures.

On October 30, 1995, this Court decided to consolidate the motions and try the entire case on the merits. On that same day evidence was presented. On October 31, 1995, the Court denied Plaintiffs' Motion for Preliminary Injunction because absentee voting and early voting had already begun for the special election. On November 3, 1995, a final hearing was held on the merits of the case. Plaintiffs argued that the Arkansas compulsory primary law combined with the requirement that parties fund their own primaries had the effect of denying the IPA access to the 1994 ballot. Because of these two laws, Plaintiffs asserted, the IPA will no longer qualify as a "political party" unless it obtains petitions signed by 3% of the electors who voted in the gubernatorial election. Plaintiffs argued that this unduly burdens them and is unconstitutional in that it violates the Equal Protection Clause by excluding certain classes of candidates from the electoral process.

Defendant argued that the Plaintiffs are not entitled to an order declaring that the application of Arkansas' former compulsory primary statutes violated the Constitution because they cannot establish a causal connection between the Arkansas statutes they claim are unconstitutional and the loss of the IPA's status as a political party under Arkansas law. In addition, Defendant contends such a claim is barred by res judicata because of the final judgment entered in *Lewis v. West*, 318 Ark. 334, 885 S.W.2d 663 (1994). For the reasons set forth below, the Court has determined that Plaintiffs' allegations are not sufficient to sustain a cause of action under § 1983, and their claim is barred by res judicata.

## ARKANSAS ELECTION LAW

There are two ways in which a group may become a political party in Arkansas: (1) the group's candidate can receive at least 3% of the entire vote cast for the office of governor or nominees for presidential electors in the last preceding general election; or (2) the

group may file a petition with the Arkansas Secretary of State containing the signatures of at least 3% of the qualified electors voting in the last preceding election for governor or presidential electors, along with a statement of their intent to form a political party. Ark. Code Ann. § 7–1–101(1)(A).

If the political party fails to receive at least 3% of the vote cast for governor or nominees for presidential electors, the party will lose its status as a political party. Ark.Code Ann. § 7–1–101(1)(C). Once a group becomes a political party, it can participate in Arkansas elections after the party files an anti-communist oath pursuant to Ark.Code Ann. § 7–3–108. If a political party has more than one person seeking a party's nomination for a particular position, that party must hold a primary election pursuant to Ark.Code Ann. § 7–7–102(a).

Until April 4, 1995, political parties were required to both hold *and* fund their own primary elections before they would be permitted to place a candidate's name on the election ballot. Act 901 of 1995, which was signed on April 4, 1995, amended Arkansas' election laws by providing that the state would bear the cost of political party primaries. Plaintiffs do not challenge the constitutionality of Arkansas' election laws in their current form. Instead, plaintiffs challenge the constitutionality of the prior election laws as they applied to the IPA and Skip Cook in the 1994 election cycle.

Plaintiffs argue that the compulsory primary law coupled with the requirement that parties fund their own primaries had the effect of denying the IPA access to the 1994 ballot. Because plaintiffs did not hold a party primary, they could not participate in the 1994 election cycle. Since they did not participate in the 1994 election cycle, the IPA was not able to obtain any percentage of the electoral vote in a state-wide election in 1994 and, as a result, the IPA lost its status as a political party. Therefore, the IPA is precluded from placing any candidates on the ballots for 1996 unless it obtains petitions signed by 3% of the electors who voted in the 1994 gubernatorial election. Ark.Code Ann. § 7–1–101(1)(A).

This year the United States Court of Appeals for the Eighth Circuit held that the *combined* effect of requiring that political parties both conduct and pay for primary elections before allowing them access to the election ballots was unconstitutional. *Republican Party v. Faulkner County, Arkansas,* 49 F.3d 1289 (8th Cir.1995).

Plaintiffs now want this Court to declare that the IPA was unconstitutionally deprived of its places on the 1994 election ballots in Arkansas, and, as a result, the Secretary of State should be required to recognize the IPA as a political party through the duration of the 1996 elections.

## RES JUDICATA

Defendant argues that Plaintiffs are not entitled to an order declaring that the application of Arkansas' former compulsory primary statutes to the IPA violated the Constitution because such a claim is barred by the res judicata effect of a final judgment entered in *Lewis v. West,* 318 Ark. 334, 885 S.W.2d 663 (1994).

■ The issue of res judicata is governed by state law. Under 28 U.S.C. § 1738 all United States courts are to give full faith and credit to judicial proceedings in any state court. However, "Section 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it ... commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1431 (8th Cir.1986) (citing *Kremer v. Chemical Construction Co.,* 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982)).

■ Res judicata bars relitigation of a claim if: (1) the prior judgment was a final judgment on the merits; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the first suit was fully litigated in good faith; (4) both suits involve the same parties or their privies; and (5) both suits involve the same claims or same cause of action. *Bailey v. Harris Brake Fire Protection Dist.,* 287 Ark. 268, 269, 697 S.W.2d 916, 917 (1985); *Crockett & Brown, P.A. v.*

*Wilson,* 314 Ark. 578, 581, 864 S.W.2d 244, 246 (1993).

 In *Lewis v. West,* which was decided in 1994, the Arkansas Supreme Court held that Arkansas' election laws, as they existed at that time, required parties to hold a primary election to select its candidates. Since the IPA did not select Mr. Cook through a primary election, the Secretary of State could not certify Mr. Cook as the IPA's candidate for Governor. *Lewis v. West,* 318 Ark. 334, 885 S.W.2d 663 (1994).

Plaintiffs concede that the prior judgment was rendered by a court of competent jurisdiction, the judgment was a final judgment on the merits, and that the IPA is in privity with Skip Cook since he was the IPA's candidate for governor and their interests in the suit were identical. However, Plaintiffs argue that the first suit was not fully litigated in good faith and that the two suits do not involve the same cause of action.

Plaintiffs contend that there was not sufficient time to fully litigate the first action in good faith. Plaintiffs argue that the parties and the circuit court judge were under time pressure to finish with the proceedings so that the order could be appealed to the Arkansas Supreme Court before ballots were printed for the election.

There is no indication that the parties in *Lewis v. West* litigated in bad faith. Instead, it seems that the plaintiffs are simply arguing that the first suit was not fully litigated. A party must have had a full and fair opportunity to litigate a claim before he will be barred by res judicata. *Butler v. City of North Little Rock,* 980 F.2d 501 (8th Cir. 1992). Mr. Cook tendered his nomination to appear on the gubernatorial ballot on September 23, 1994, which the Secretary of State accepted conditionally. On September 22, 1994, Mr. Lewis filed his action with the circuit court. Mr. Cook moved to intervene on September 27, 1994. A hearing was held on September 30, 1994. Plaintiffs argue that this amount of time was not sufficient for the parties to be able to fully litigate the suit. In other words, it was not enough time for the parties to be able to fully pursue all of the available legal theories as to the reason that the IPA's candidates should have been allowed on the ballot.

The Court is not persuaded by this argument. The parties in *Lewis v. West* were litigating the interpretation of Arkansas' election laws and ballot access for the IPA's nominees. There should have been sufficient time for the parties to consider their cases and foresee that constitutional issues might arise. At the hearing, the parties had the opportunity to present evidence, call witnesses, and cross-examine their opponents' witnesses. Therefore, there was full and fair opportunity for the parties to litigate their claims.

Plaintiffs also argue that the two suits do not involve the same cause of action. What constitutes a cause of action has been a difficult question for courts to resolve. 1B James W. Moore et al., Moore's Federal Practice ¶ 0.401[1] (2d ed. 1993). In addition:

> Various tests have been suggested, among them: (1) whether the same right is infringed by the same wrong; (2) whether a contrary decision in the second action would impair or destroy rights or interests established by the first judgment; (3) identity of grounds; and (4) whether the same evidence would suffice to support both judgments.

Id. at 187–191.

 The doctrine of res judicata prevents parties or their privies from relitigating claims on grounds that were raised or could have been raised in a prior action. *Lane v. Peterson,* 899 F.2d 737, 741 (8th Cir.1990) (citing *Poe v. John Deere Co.,* 695 F.2d 1103, 1105 (8th Cir.1982)).

 The Restatement (Second) of Judgments looks to whether the claims arise from the same transaction to determine the identity of claims:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, ... out of which the action arose.

Restatement (Second) of Judgments § 24(1) (1982). The fact that two actions may require some variance in proof does not mean that the two claims are not the "same claim" for res judicata purposes. "The operative question in each case is whether the claims arise out of the same nucleus of operative facts." *Lane*, 899 F.2d at 743.

The order sought by Plaintiffs in this action and the case of *Lewis v. West* involve the same cause of action because they both arise from the Secretary of State's refusal to certify Cook for inclusion in the November ballot as the IPA's gubernatorial nominee. Therefore, both arise from the same nucleus of operative facts. In the present suit, plaintiffs simply raise a new theory for determining that the IPA's candidates should have been placed on the election ballots in 1994. "[O]nce a claim is brought to a final conclusion, all other claims arising out of that transaction or series of transactions are barred, even if based on different theories or seeking a different remedy." *Lawrence v. McGuire*, 651 F.Supp. 312, 316 (S.D.N.Y. 1987) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1987).

Also, it should be noted that a state court has jurisdiction to hear § 1983 claims. *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Section 1983 claims that are brought in federal court "are not exceptions to the doctrines of issue and claim preclusion.... and any claims which could have been litigated in the state court proceeding, including constitutional claims, are barred from being brought in federal court by the doctrine of res judicata." *Lawrence v. McGuire*, 651 F.Supp. 312, 316 (S.D.N.Y. 1987) (citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 84–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1990).

Plaintiffs assert that they fall under the Eighth Circuit's findings in *Republican Party of Arkansas v. Faulkner County, supra.* In *Republican Party*, the Eighth Circuit held that the combination of requiring a party to hold and fund a primary election is unconstitutional. In *Lewis v. West*, the court did not address the funding requirement at all. Instead, the court addressed the question of whether a political party was required to hold a primary election. Therefore, the plaintiffs do not fall squarely within the holding of the *Republican Party* case. Even if they did fall under the Eighth Circuit's ruling, plaintiffs are not entitled to relitigate their cause of action because the ruling in *Republican Party* was issued subsequent to the final judgment in *Lewis v. West*. If a party had the opportunity to raise the question of the constitutionality of a statute, res judicata prohibits that party from collaterally attacking the final judgment even when a subsequent decision holds that the statute under which the prior judgment was obtained was unconstitutional. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940).

However, Plaintiffs argue that their claim is not barred by res judicata because of Arkansas Rule of Civil Procedure 13. As noted earlier, Plaintiffs concede that the IPA is in privity with Skip Cook for res judicata purposes. According to the Plaintiffs, Skip Cook intervened in the first suit as a defendant/cross-claimant rather than as a plaintiff. Therefore, if Mr. Cook had brought the claim that Arkansas' election laws were unconstitutional, the claim would have been brought as a permissive cross-claim under Rule 13(f) rather than as a compulsory counterclaim under Rule 13(a).[2] The distinction is important because permissive cross-claims are not barred by res judicata, while compulsory

---

**2.** Ark.R.Civ.P. 13(a) states:
 A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

Ark.R.Civ.P. 13(f) states:
A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence which is the subject matter wither of the original action or of a counterclaim therein or relating to any property which is the subject matter of the original action....

counterclaims are always barred by res judicata. *See Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422 (8th Cir.1986).

If Mr. Cook intervened as a plaintiff in *Lewis v. West,* he would not have brought the claim asserting that the election laws were unconstitutional against his co-party, Delbert Lewis, but against the Secretary of State. Therefore, his claim would not be classified as a cross-claim. In addition, Mr. Cook's claim against the Secretary of State would not be classified as a *counterclaim* because the Secretary of State did not bring any claims. Therefore, if Mr. Cook intervened as a plaintiff, Rule 13 would not apply. If, however, Mr. Cook intervened as a defendant/cross-claimant, Rule 13 may be applicable.

In his Motion to Intervene (Joint Ex. 1 at 7), Mr. Cook asked the circuit court to allow him to intervene as a plaintiff with regard to the Secretary of State, but as a defendant with regard to Delbert Lewis. In his answer and cross-claim, however, Mr. Cook refers to himself as a defendant and cross-claimant. (Joint Ex. 1 at 10). In determining whether Cook intervened as a plaintiff or as a defendant/cross-claimant, it should be considered that:

> ... the position of an intervenor, whether as a plaintiff or defendant, is not a matter of label or form, but rather of substance and may be determined by analysis of the proceedings in the case.... An intervenor who files his complaint or pleading asking for affirmative relief, independent from that sought by the plaintiff or defendant in the original action, or against either or both of them, should be classified as a plaintiff rather than a defendant.

59 Am.Jur.2d *Parties* § 170 (1987); *Jack Wood Constr. Co. v. Ford,* 258 Ark. 47, 522 S.W.2d 408 (1975).

In the first suit, plaintiff Lewis asked the court to order the Secretary of State to certify his name as the IPA's nominee for governor. In both his motion to intervene and his answer and cross-claim, Mr. Cook sought an order requiring the Secretary of State to certify *his* name as the IPA's gubernatorial nominee. Therefore, he sought affirmative relief that was independent from the relief sought by Mr. Lewis. As a result, Mr. Cook should be considered to have intervened as a plaintiff with regard to the Secretary of State and as a defendant with regard to Mr. Lewis. As stated earlier, since Mr. Cook intervened as a plaintiff with regard to the Secretary of State, Rule 13 will not apply and res judicata will bar Plaintiffs' claim.

## THE MERITS

Even if res judicata did not bar Plaintiffs' claims, defendant would still prevail on the merits of the case.

While it is a fundamental democratic premise that minority parties have reasonable access to the election process, it is also a necessity that such access be subject to certain rules and regulations to ensure the integrity of the process. Arkansas has enacted certain laws to achieve such a result. Plaintiffs assert that the Arkansas election laws that required parties to both hold and fund a primary election were unconstitutional and caused the Plaintiffs to lose their political party status. For the reasons stated below, however, the plaintiffs have not shown that these laws were the reason that the IPA lost its status as a political party.

Plaintiffs filed suit against the Secretary of State pursuant to 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress....

To state a cause of action under § 1983, the plaintiff must prove that the defendant's action caused the plaintiff to be deprived of his rights. *Chapman v. Musich,* 726 F.2d 405 (8th Cir.1984); *German v. Killeen,* 495 F.Supp. 822 (E.D.Mich.1980). The question to be resolved in this case is whether the election laws, as they existed in 1994,

prevented the IPA from receiving a benefit to which they were entitled by law.

 The IPA became a political party after its presidential nominee received 10.43% of the votes in the 1992 presidential election. To maintain its political status, the IPA had to receive at least 3% of the total votes cast for the office of governor in the 1994 general election. The IPA had to file its nominees for a primary election with the Secretary of State by March 29, 1994. Delbert Lewis attempted to file as the IPA's nominee, but his tender was refused by the Secretary of State because he believed that the IPA was not a political party. Although this belief was erroneous, there were other, valid grounds for a refusal to accept Mr. Lewis' tendered nomination. Under Ark. Code.Ann. § 7–3–108, a party is not allowed to participate in an election until the party has filed an anti-communist oath with the Secretary of State. The IPA did not file an anti-communist oath until September 7, 1994. *Lewis v. West, supra.* Therefore, the IPA could not place any of its nominees on the election ballot until that date.

By the time that the IPA would have been permitted to participate in the election cycle, there were two people who desired to be the IPA's nominee for governor: Delbert Lewis and Skip Cook. Under Arkansas law, if more than one person seeks a party's nomination, the party must hold a primary election. Since two people wanted to be the IPA's nominee by the time the IPA could be allowed to participate in the election cycle, the IPA would should have held a primary election to determine which candidate would be their nominee in the general election. However, the IPA missed the March 29th deadline for filing its nominees for a party primary with the Secretary of State. This is sufficient to have prevented the IPA from being allowed to place its candidates on the 1994 election ballots.

Plaintiffs argue, however, that the IPA did not hold a primary election because it did not have the financial ability and because they did not believe they were required to do so. Furthermore, plaintiffs contend that they did not believe they were required to hold a primary election because—among other reasons—a person at the Secretary of State's office informed them that it was not a requirement. In view of *Republican Party, supra,* these assertions might well raise serious issues but for the fact that plaintiffs concede that the IPA did not even attempt to reactivate the party until July of 1994. This was well after the deadline for conducting a party primary. Thus, plaintiffs cannot establish a causal connection between the Arkansas primary election laws and the harm they allege. Plaintiffs' claims under § 1983 are dismissed.

IT IS SO ORDERED.