The Honorable Sharon Priest Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Ms. Priest:
This opinion is being issued in response to your recent question regarding the procedure for new political parties to attain party status for purposes of the presidential preferential primary election.
In your correspondence, you note that that two statutes, A.C.A. §7-1-101(1) and A.C.A. § 7-7-203(g), both establish procedures and set deadlines under which political groups can petition to attain party status. You also note that both statutes contain language that appears to except presidential preferential primaries from their provisions.
Section 7-7-203(g) sets the deadline for filing a petition to form a new political party as "noon on the first Tuesday in the fourth calendar month before the preferential primary election." Section 7-1-101(1) establishes a filing deadline of noon of the first Tuesday in May before the preferential primary election. You express concern that if a party attains its party status in accordance with the May deadline under Section7-1-101(1), your office will not have sufficient time before the presidential preferential primary to perform the various mechanics of the election process, such as verifying the petition, accepting filing of candidates, printing ballots, etc.
With regard to this situation, you have presented the following questions:
 (1) Could a political group which attains party status under the January deadline file presidential nominees for the primary elections?
 (2) Is it still permissible for a political group to nominate its presidential candidate by convention pursuant to A.C.A. § 7-8-302 without the primary process?
RESPONSE
Question 1 — Could a political group which attains party status under theJanuary deadline file presidential nominees for the primary elections?
It is my opinion that a political group that has attained party status under the January deadline can file presidential nominees for the primary elections.
Your question appears to arise out of the confusion resulting from an assumption that the exception language contained in both A.C.A. §7-1-101(B) and in A.C.A. § 7-7-203(g), (excepting presidential preferential primaries from the deadlines and procedures of these statutes) is still viable. That is, you appear to assume that neither of the procedures outlined in the two statutes applies to groups who wish to seek party status for purposes of participating in a presidential preferential primary election. However, I have previously opined that these exception clauses have been impliedly repealed, and that the proper procedure for such groups to follow is the one set forth in A.C.A. §7-7-203(g), i.e., the January filing deadline. See Op. Att'y Gen. 90-145, a copy of which is enclosed. In that opinion, it was noted that the law is unclear on this issue and is susceptible of various interpretations.[1] The Attorney General opted for the interpretation that was found to be most tenable. From the legislative history, it appears that the exception language was included in those statutes because another law, which has since been repealed, had set forth the procedure that would be applicable to presidential preferential primaries. The repeal of the presidential preferential primary procedure impliedly repealed the exception language in A.C.A. § 7-1-101 and in 7-7-203(g). Clearly, those exceptions had meaning only because of the existence of a separate deadline and procedure for presidential preferential primaries. Therefore, the repeal of the presidential primary procedure rendered the exception language unnecessary and, in fact, meaningless. I concluded in Op. No. 90-145 that the exception language is no longer viable and that the procedure set forth in A.C.A. § 7-7-203(g), which currently establishes a January filing deadline, is applicable to political groups seeking to petition for party status for the purpose of participating in presidential preferential primaries.
In Op. No. 90-145, I did not address the question of why the provisions of A.C.A. § 7-7-203(g), rather than those of A.C.A. § 7-1-101(1), apply to presidential preferential primaries. The legislative history of A.C.A. § 7-1-101(1), which creates a May filing deadline, indicates that the May deadline of that statute was created at a time when preferential primaries were held in July. Because preferential primaries are now held in May, the provisions of A.C.A. § 7-1-101(1), as you have noted, are no longer practicable.
With specific regard to new parties who wish to participate in the presidential preferential primary, it is also significant that all political parties must comply with the provisions of A.C.A. § 7-7-203(d) in order to participate in primary elections. Because that section requires parties to certify their candidates to the Secretary of State no later than forty days prior to the preferential primary election, the new party can only meet the forty-day certification deadline if it has attained its party status under the January deadline. (If, hypothetically, a party petitioned for party status in May under the procedure set forth in A.C.A. § 7-1-101(1), the party would have already missed the 40-day deadline of A.C.A. § 7-7-203(d) before it ever attained party status.)
I therefore conclude that political groups who wish to attain party status for the purpose of participating in presidential preferential primary elections must comply with the provisions of A.C.A. § 7-7-203(g) (the January filing deadline) in order to attain party status, and that a new party that has attained its party status under the January deadline may file presidential nominees for the presidental preferential primary election.
Question 2 — Is it still permissible for a political group to nominateits presidential candidate by convention pursuant to A.C.A. § 7-8-302without the primary process?
It is my opinion that it is permissible for a political group to nominate its presidential candidate pursuant to A.C.A. § 7-8-302
without participating in the primary process.[2]
The provisions of A.C.A. § 7-8-302 set forth a procedure whereby political parties and political "groups" can choose their electors of the offices of president and vice-president of the United States. Under this procedure, the parties' or groups' choices of electors are made by their state conventions and certified to the Secretary of State. The statute states: "The filing of the certificate with the Secretary of State shall be deemed and taken to be the choosing and selection of the electors of this state, if the party or group is successful at the polls, as provided in this subchapter, in choosing their candidates for President and Vice President of the United States." A.C.A. § 7-8-302(1)(B).
The procedure provided by A.C.A. § 7-8-302 has not been challenged, nor does it conflict with any other election procedures. It is therefore entitled to a presumption of validity. I therefore conclude that nominations for the offices of president and vice-president of the United States may be conducted pursuant to this procedure.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] I also pointed out the need for legislative clarification of this matter.
[2] It should be noted that this procedure is applicable only to the nomination of candidates for the offices of president and vice-president of the United States. No such procedure is provided for the nomination of candidates for other offices, and the Arkansas Supreme Court has held that primaries are necessary for such other nominations. See Lewis v.West, 318 Ark. 334, 885 S.W.2d 663 (1994).