Brent STANDRIDGE *v.* Sharon PRIEST

98-1115                                                    976 S.W.2d 388

Supreme Court of Arkansas
Opinion delivered October 22, 1998

*Appellant,* pro se.

*Winston Bryant,* Att'y Gen., by: *Tim Humphries,* Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. This appeal is an election case initiated by appellant Brent Standridge after he was denied an attempt to file as a Republican candidate for a judge's position, District 6, on the court of appeals. We assume jurisdiction of this matter pursuant to Ark. Sup. Ct. R. 1-2(a)(4).

On March 31, 1998, Standridge tendered his required documents and filing fee to qualify him as a candidate for one of the six new court of appeals positions created by Act 15 of 1995, First Extraordinary Session. The Secretary of State, Sharon Priest, refused to accept Standridge's filing. In doing so, she relied on attorney general's opinion No. 97-198 which provides that the Governor's appointees presently holding the six new positions were entitled to continue in office past January 1, 1999, until the General Assembly makes special provisions for the election of the appointees' successors. In short, Priest rejected Standridge's efforts to file because no court of appeals position would appear on the November 3, 1998 General Election ballot, since no vacancy would occur in any of the Act 15 positions commencing in January 1999.

Standridge's contention is that the law provides for the Arkansas voters to elect the new court of appeals judges at the

1998 General Election and that those judges are to take office on January 1, 1999. Consequently, he filed a petition for mandamus and declaratory relief on April 20, 1998, seeking the Pulaski County Circuit Court to declare him as eligible to file for the new District 6 position on the court of appeals and to direct Priest to place his name on the May 19, 1998 Republican Party primary ballot. Standridge further pled that, if he was unopposed or was declared the winner in the primary election, Priest should place his name on the 1998 General Election ballot. On April 29, 1998, Secretary of State Priest responded, denying that Standridge was entitled to the relief he sought, but she also requested that Standridge's petition be dismissed because it was untimely. The parties entered into a number of written stipulations; however, it was the Attorney General's office, as representative of Priest, who notified the circuit court that the case could be decided on the briefs and that no hearing was necessary.

On the day of the 1998 preferential primary election, May 19, 1998, the circuit court entered its order denying Standridge's petition. The trial court held Standridge's petition was untimely, but it added that, on the merits of the case, the present six appointees currently serving on the court of appeals would hold over in office in 1999 until the General Assembly made provisions for the election of their successors. In sum, the trial court ruled that no court of appeals positions were available for which candidates could be elected. We affirm the trial court's decision that Standridge's request for relief was untimely.

██ ██ In *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989), this court discussed in detail the proper legal proceeding to file to determine the eligibility of a candidate and to decide whether his or her name should be placed on or removed from a ballot.[1] There, the court sanctioned the use of mandamus when seeking the appropriate election officials to remove a candidate's name from the ballot or requiring

---

[1] Arkansas law in relevant part provides that no person's name shall be printed upon the ballot as a candidate for any public office in this State at any election unless the person is qualified and eligible at the time of filing as a candidate for the office to hold the public office for which he is a candidate . . . . Ark. Code Ann. § 7-5-207(b) (Supp. 1997).

them to place a candidate's name on the ballot. *Craighead County*, 300 Ark. at 412, 779 S.W.2d at 172. In upholding the use of mandamus in these circumstances, the court concluded that because petitions for writs of mandamus must be heard within seven days, such a remedy provides for prompt consideration of issues, which is often important in election cases. 300 Ark. at 412, 779 S.W.2d at 172; *see also* Ark. R. Civ. P. 78(d), Court's Notes, 1995 Amendment. However, because mandamus does not provide the means for the court to make a declaration concerning a candidate's eligibility, we directed that the person seeking mandamus in these matters must also include a request for declaratory relief. The *Craighead County* court further held that, even though the mandamus remedy is combined with a request for declaratory relief, the action will still be considered essentially one of mandamus and must be heard within seven days. *Id.*

██ In the present case, Standridge filed an appropriate petition for mandamus and declaratory relief, and while his petition requested expedited consideration of his case under Ark. R. Civ. P. 78(d), he failed to demand an expedited hearing or decision prior to the May 19, 1998 preferential primary election. Standridge apparently believed that, since he was the only individual to file for one of the new court of appeals positions, nothing else was required of him. Such is not the case.[2] First, we note that, under Ark. Code Ann. § 7-7-203(d) (Supp. 1997), the Republican State Committee's chairman and secretary had the duty to certify the Committee's ballot and names of *all* candidates who timely and properly filed for office to the various county committees and county boards of election commissioners. Those state party officials were required to make the certification no later than forty days before the preferential primary election. Ark. Code Ann. § 7-7-203(d). In this case, the State Committee was required to certify its qualified candidates on or before April 9,

---

[2] While the names of unopposed candidates are omitted from the primary ballot, such a ballot omission occurs only when one candidate *qualifies* for a particular office or position. *See* Ark. Code Ann. § 7-7-304(c) (Supp. 1997). (Emphasis added.) Standridge may have mistakenly believed that since he was the only person to file for the position, no ballot issue existed concerning the primary election ballot.

1998.[3] Thus, Standridge had the burden to show he was a qualified candidate, yet he failed to obtain the circuit court's prompt ruling on this question. If he had demanded a timely hearing and obtained an unfavorable outcome, Standridge then could have appealed the adverse ruling to this court and sought accelerated consideration of his appeal under Rule 6-1 of the Rules of the Supreme Court. Because Standridge failed to seek a timely resolution and enforcement of Arkansas's applicable election provisions prior to the 1998 primary elections, the circuit court correctly denied his petition for mandamus and declaratory relief. *See Lewis v. West*, 318 Ark. 334, 885 S.W.2d 663 (1994).

For the foregoing reasons, we affirm the lower court's ruling that Standridge's petition was filed untimely.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I join in the majority opinion and agree that the appellant has failed to follow the necessary procedures that would allow us to order his placement on the ballot.

But, in addition, it is particularly anomalous for the appellant to argue that an election must be held when the General Assembly has failed to fix the Court of Appeals district for that election. Surely, having a district is an essential prerequisite. In reading Ark. Code Ann. § 16-12-101 (Supp. 1997), the General Assembly specifies Court of Appeals elections for the six new judges in the 1998 general election *and* creates a Court of Appeals Apportionment Commission "to assist the General Assembly with the establishment" of the districts for those judges. Ark. Code Ann. § 16-12-101(e)(2) (Supp. 1997). To date, those districts have not been established by law. How can there be an election without knowing who the voters will be?

---

[3] We note that no one argues whether the State Committee chairman and secretary or the present Act 15 appointed judges should have been made parties to this litigation. Therefore, we need not consider these issues except to mention that part of the *Craighead County* decision indicates that, in election cases involving mandamus and declaratory actions, the court must see that all necessary parties are joined under Ark. R. Civ. P. 19.

The appellant speculates that perhaps the six new judges could run in the existing six Court of Appeals districts or run at large. But to implement the Court of Appeals district would be pure legislation on our part. Such matters are for the General Assembly to determine — not this court.

I would affirm the trial court for the reasons stated in the majority opinion, but also for the additional reason that an election without a fixed Court of Appeals district is an impossibility.