REPUBLICAN PARTY of GARLAND COUNTY, ARKANSAS, and Linda Boyd *v.* Nancy JOHNSON, in her capacity as County Clerk of Garland County, Arkansas, and the Garland County Board of Election Commissioners

04-509                                                    193 S.W.3d 248

Supreme Court of Arkansas
Opinion delivered September 23, 2004

[redacted]

*Williams, Hutchinson & Stone,* by: *Lloyd V. Stone, III,* and *Timothy C. Hutchinson,* for appellant.

*Ralph C. Ohm,* for appellee Nancy Johnson in her official capacity as county clerk of Garland County.

TOM GLAZE, Associate Justice. This election case arises out of the attempts by appellant Linda Boyd to qualify as a candidate for Garland County Clerk in the Republican preferential primary held earlier this year. The trial court determined that Boyd failed to file her party certificate and political practices pledge with the county clerk prior to the 12:00 noon filing deadline; therefore, the court denied Boyd's petition for writ of mandamus and her request for a declaratory judgment. On appeal, Boyd argues that the trial court erred in its interpretation of Ark. Code Ann. § 7-7-203 (Supp. 2003).

Arkansas election law provides that a party certificate and the political practice pledge for primary elections shall be filed with the county clerk, or the Secretary of State, as the case may be, during regular office hours in the period beginning at 12:00 noon on the third Tuesday in March and ending at 12:00 noon on the fourteenth day thereafter before the preferential primary election. *See* § 7-7-203(c)(2). This year, the noon filing deadline fell on March 30, 2004. According to Garland County Clerk Nancy Johnson, Boyd failed to file her paperwork in the county clerk's office prior to that noon deadline. As a result, on April 8, 2004, Boyd and the Republican Party of Garland County filed a petition for issuance of writ of mandamus and declaratory judgment, alleging that Johnson had locked the clerk's office doors prior to the noon deadline in order to prevent the timely filing of Boyd's party certificate and political practices pledge.

At an April 26, 2004, hearing on Boyd's petition, the trial court heard sixteen witnesses testify about the events as they unfolded on March 30. On that morning, representatives of both the Democratic Party and the Republican Party were present in the Garland County Quorum Court courtroom to receive party filing fees and to provide party certificates. About 8:30 a.m. on March 30, 2004, Johnson went up to the courtroom and talked to two of the Republican officials: Larry Bailey, Chairman of the Garland County Republican Party, and his assistant, Twyla Brown. Later, at about 11:00 a.m., Johnson returned to the courtroom. Bailey and Brown were still present and assisting candidates with their filings. In addition, Charles Tapp, Chairman of the Garland County Democratic Party was in the courtroom. Johnson made an announcement that the clock on the wall in the courtroom and the clock in her office "matched," and that the clock in the courtroom would be used to determine the noon deadline. None of the party representatives objected to the use of the courtroom clock as the official timekeeper.

Boyd, who had been employed as a deputy county clerk in the Garland County Clerk's office for sixteen years, testified that she waited until the last minute to file because she was worried about losing her job if she filed for county clerk against her employer, Nancy Johnson. Boyd further testified that, on March 30, she and Deborah Cole[1] entered the quorum court courtroom at approximately 11:45 a.m. with the purpose of filing as the Republican candidates for county clerk and county coroner, respectively. Boyd began filling out the necessary paperwork about five or ten minutes after she entered the courtroom. Bailey said that he sat down with Boyd to help her fill out her filing papers, and that this process took two or three minutes.

When Boyd finished filling out her papers, Cole sat down to start her paperwork. Tapp objected to Cole's filing, saying that Cole did not begin the filing process until after 12:00 noon. Tapp testified that this happened at 12:03 p.m. According to Bailey, Boyd was still in the courtroom, but "was on her way out" when Tapp voiced his protest. Boyd likewise testified that she was "in the process of standing up, of leaving," when Tapp made his pronouncement. Bailey agreed that, at the time Boyd left the courtroom, the courtroom clock showed it to be past noon.

---

[1] Deborah Cole was originally named as a plaintiff in this lawsuit; however, she moved to voluntarily nonsuit her case during the hearing before the Garland County Circuit Court.

After leaving the courtroom, Boyd testified that she went downstairs to file her paperwork in the county clerk's office. Boyd claimed that the clock on her cell phone indicated that it was 11:55 p.m., and that when she arrived at the door to the clerk's office, the door was locked, and the lights were out. A few minutes later, Boyd averred, she saw Johnson holding a door to the clerk's office and yelling that it was "too late." According to Boyd, she and Johnson stood outside the door, "having words," for approximately "fifteen to twenty, fifteen to thirty" minutes. Johnson eventually allowed Boyd to file-stamp her paperwork at 12:34 p.m.

Other witnesses testified that they were present in the courthouse and clerk's office on March 30. For example, Chief Deputy Clerk Judy Hughes testified that she was in the clerk's office at 12:15 p.m., and the lights were still on and the doors unlocked at that time. Deputy Clerk Tammy Lambert testified that she saw Boyd outside of the clerk's office at approximately 12:15 or 12:20 p.m.. Robert Shearon, a reporter for the *Sentinel Record*, testified that he arrived in the courthouse around 11:50 a.m. on March 30, 2004. Shearon stated that he looked at the clock in the clerk's office when he heard Johnson call "time's up"; that clock read 12:00 noon when Johnson made her announcement. Shearon further stated that he had not seen Boyd in the clerk's office prior to that time. He waited in the clerk's office until approximately 12:04 or 12:05 p.m. The lights were still on, and there were people in the office.

After hearing the above testimony, the trial court denied Boyd's petition, finding that Johnson had notified all parties in the quorum court courtroom that the clock in the courtroom would be the official time for purposes of establishing the 12:00 noon deadline, and that Boyd failed to file her party certificate and political practices pledge with the county clerk prior to the 12:00 noon filing deadline as established by the official clock. From that decision, Boyd brings the present appeal.

In *State v. Craighead County Board of Election Commissioners*, 300 Ark. 405, 779 S.W.2d 169 (1989), this court discussed the proper legal proceeding to file to determine the eligibility of a candidate and to decide whether his or her name should be placed on or removed from a ballot. There, the court sanctioned the use of mandamus when seeking the appropriate election officials to remove a candidate's name from the ballot or requiring them to place a candidate's name on the ballot. *Craighead County*, 300 Ark.

at 412, 779 S.W.2d at 172. However, because mandamus does not provide the means for the court to make a declaration concerning a candidate's eligibility, the court directed that the person seeking mandamus in these matters must also include a request for declaratory relief. *Id.; see also Standridge v. Priest*, 334 Ark. 568, 976 S.W.2d 388 (1998). The standard of review upon denial of a writ of mandamus is whether the trial court abused its discretion. *Hicks v. Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993); *State v. Sheriff of Lafayette County*, 292 Ark. 523, 731 S.W.2d 207 (1987).

In her appeal, Boyd argues that the trial court erroneously interpreted § 7-7-203(c)(2) and (c)(3) as giving the county clerk a "judicial function not found in that statute," and she asserts that the court's refusal to issue the writ constituted an abuse of discretion. The statute at issue, Ark. Code Ann. § 7-7-203(c), provides in relevant part, as follows:

(2) *A party certificate and the political practice pledge for primary elections shall be filed with the county clerk* or the Secretary of State, as the case may be, *during regular office hours in the period* beginning at 12:00 noon on the third Tuesday in March and *ending at 12:00 noon on the fourteenth day thereafter before the preferential primary election.*

*The name of a candidate who fails to file a party certificate by the filing deadline with the Secretary of State or county clerk, as the case may be, shall not appear on the ballot.*

(Emphasis added.)

Boyd suggests that this court is called upon to determine what is meant by "12:00 noon" in the statute. She first cites the familiar provision that the basic rule of statutory construction is to give effect to the intent of the legislature, and when a statute is clear, it is given its plain meaning. *See City of Dover v. City of Russellville*, 352 Ark. 299, 100 S.W.3d 689 (2003). Regarding the interpretation of election statutes, this court has held that contesting an election is purely statutory, and a strict observance of statutory requirements is essential to the exercise of jurisdiction by the court, as it is desirable that election results have a degree of stability and finality. *See Tate-Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003). Further, the provisions of election laws are mandatory if enforcement is sought before the election. *See Lewis*

*v. West*, 318 Ark. 334, 885 S.W.2d 663 (1994); *Stillinger v. Rector*, 253 Ark. 982, 490 S.W.2d 109 (1973).[2]

█ Boyd concedes that § 7-7-203(c)(2)-(3) plainly states that a prospective candidate's failure to meet the noon filing deadline will result in her name not appearing on the ballot for the preferential primary election. She argues instead that the statute is silent as to who determines when noon has been reached. Clearly, § 7-7-203(c)(2) provides that a party certificate and political practices pledge for primary elections "shall be filed with the county clerk . . . during regular office hours in the period . . . ending at 12:00 noon on the fourteenth day thereafter before the preferential primary election." The trial court correctly concluded that, by the language used in § 7-7-203(c)(2), the General Assembly imposed a duty on the county clerk to end party candidate filings when the 12:00 noon deadline has been reached. The county clerk in these filing matters must have some discretion in discharging this duty, but certainly the clerk's duty is not final when, as here, a candidate contests the clerk's decision, which brings us to Boyd's next argument.

Boyd further argues that the trial court erroneously interpreted § 7-7-203(c)(2) to give the county clerk the judicial function of determining a candidate's eligibility. That is not what occurred here. This court has made it all too clear that when the eligibility of a person to appear on the ballot is controverted, it becomes a matter for the courts. *See Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000); *Ivy v. Keith*, 318 Ark. 50, 883 S.W.2d 805 (1994). Indeed, in *Craighead County Board of Election Commissioners*, *supra*, this court made it explicit that neither a party committee nor

---

[2] To the extent that Boyd argues that this court should interpret this statute liberally, this contention is without merit. The case on which she relies, *Fisher v. Taylor*, 210 Ark. 380, 196 S.W.2d 217 (1946), was specifically limited to its facts. Further, cases following *Fisher* have made it plain that "substantial compliance" is not sufficient. For example, in *Wright v. Sullivan*, 229 Ark. 378, 314 S.W.2d 700 (1958), this court rejected a "substantial compliance" argument where the appellant had filed his political practices pledge two days late. The *Wright* court first noted that the provisions of election laws "are mandatory if enforcement is sought before the election." *Wright*, 229 Ark. at 380. It then stated that, in *Fisher*, the court had held that "the rule there applied would not be controlling 'under ordinary and normal conditions,'" which are the conditions presented by the case at bar." *Id.*

a board of election commissioners has the authority to declare a candidate ineligible. The court in that case explained further as follows:

> To allow the board to consider disputed facts, make findings, and act thereon, is to put it in the same posture as a judicial tribunal. The board, being a ministerial entity, simply does not have that power. . . . The board may not exercise discretion or make findings of fact concerning the eligibility of a candidate. That determination may only be made by a court[.]

*Craighead County*, 300 Ark. at 410.

Boyd is mistaken when she states that the trial court "made no determination independent of the county clerk's [decision] as to whether appellant Boyd met the noon filing deadline." The trial court's order specifically made the following factual findings:

> 4. At approximately 11:00 o'clock a.m., Nancy Johnson, after noting that the clock in her office reflected the same time as the clock in the County Courtroom, notified all parties in the County Courtroom that the clock located therein would be the official time for purposes of establishing a 12:00 o'clock noon deadline.
>
> * * * *
>
> 6. No representatives of the Republican or Democratic Party objected to the declaration that the clock in the County Courtroom would be the official time to establish the 12:00 noon deadline by Ms. Johnson.
>
> * * * *
>
> 10. According to the County Courtroom clock, at 12:03 p.m. when Mr. Tapp objected to Ms. Cole's filing, Plaintiff Linda Boyd was still in the County Courtroom.
>
> 11. Plaintiff Linda Boyd failed to file her party certificate and political practice pledge with the County Clerk prior to the 12:00 o'clock noon deadline as established by the official clock.

Although Boyd offered testimony to the contrary, the foregoing factual determinations made by the trial court, pursuant to its authority as described in *Craighead County*, unquestionably

support the court's holding that Boyd's filing was untimely. Arkansas law is quite settled. This court will not reverse a trial court's factual findings unless they are clearly erroneous. *See Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003); *Con-Agra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 30 S.W.3d 725 (2000). In reviewing the trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Carson v. County of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.*

■ Here, it is apparent that the trial court believed the testimony of Charles Tapp when he stated that he and others present in the quorum court courtroom were informed as early as 11:00 a.m. that the courtroom clock would be the official time-keeper for determining when noon was. Further, the court obviously credited Bailey's testimony that, at 12:03 or 12:04 by the clock in the courtroom, Ms. Boyd was still in the room. Also consistent with the trial court's holding is the testimony of Robert Shearon, the reporter for the local newspaper. Shearon testified that he was in the clerk's office before 12:00 p.m., and Boyd was not present; nor was Boyd there when Shearon left the clerk's office at approximately 12:04 or 12:05 p.m. Shearon added that, when he left the office, the lights were on, there were people in the room, and the doors were unlocked. Given these facts and the other evidence that representatives of both parties were on notice of this standard, and that no one objected to the declaration of using the courtroom clock as the standard, the trial court did not err in concluding that the courtroom clock was the official time, and that Boyd did not file her paperwork with the county clerk's office by noon on that clock.

In her final point, Boyd raises a novel argument for reversal, contending that, as a deputy county clerk, she had the authority to file political practice pledges; further, because she had her political practice pledge and party certificate in her possession and control prior to the noon deadline, those papers should be deemed to have been "filed" before the deadline. Boyd cites *Henard v. St. Francis Election Committee*, 301 Ark. 459, 784 S.W.2d 598 (1990), for the proposition that "though a filing mark is evidence of the filing of the document, the mark in and of itself is not an essential element of the act," and *Hogue v. Hogue*, 137 Ark. 485, 208 S.W. 579

(1919), for the statement that "a paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file." Because she is a "proper officer," she argues, her political practice pledge and party certificate should have been considered filed by the mere fact that she held them in her hand.

■ It is true that there is caselaw to the effect that the file-stamp is merely "evidence of filing." *See, e.g., Stanislaus v. Austin,* 202 Ark. 441, 150 S.W.2d 610 (1941) ("[t]he act of leaving or depositing the paper in the proper office constitutes a filing of it"); *Westbrook v. McDonald,* 184 Ark. 740, 43 S.W.2d 356 (1931) ("while it is proper for an officer whose duty it is to receive and file an instrument in writing to indorse thereon the date of filing when he receives the instrument, such indorsement is not the filing, but is merely an evidence of filing, and that the instrument is filed when it is delivered to the officer at his office to be received by him and kept on file"). Nonetheless, Boyd's argument is without merit. Boyd did not "deposit[ ] the paper in the proper office" or deliver her paperwork to herself "at [her] office . . . to be kept on file." She was simply standing in the quorum court courtroom with the papers in her hand. Further, even if we could agree with this argument, the fact remains that she did not complete the paperwork and have it in hand until 12:03 p.m. by the courtroom clock, according to the testimony of Garland County Republican Party Chairman Larry Bailey. Thus, even accepting the idea that her holding the papers constituted a proper "filing," she still did not "file" her paperwork by the noon deadline.

In sum, the trial court was correct to deny Boyd's petition for writ of mandamus and declaratory judgment. Boyd did not file her paperwork on time, and the trial court must be affirmed.