899 F.2d 737
 RICO Bus.Disp.Guide 7452
 Clift C. LANE, Individually, and as Trustee under the Clift
C. Lane Revocable Trust, and as Trustee under the Dorothy P.
Lane Trust, and Dorothy P. Lane, Individually, and as
Trustee under the Dorothy P. Lane Revocable Trust, and as
Trustee under the Clift C. Lane Trust, Appellants,
v.
John E. PETERSON, Jr., and Edward H. Covell, Individually
and as Members of the Special Panel, and William
B. Sullivan, Appellees.
 No. 89-2216.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 18, 1990.
Decided March 30, 1990.
 
 Thomas F. Dowd, Omaha, Neb., for appellants.
 Ronald A. May, Little Rock, Ark., for appellees.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Clift and Dorothy Lane appeal from the district court's[1] dismissal of their claims against their attorney and two members of a panel set up by a bankruptcy court to assist them in a Chapter 11 reorganization. The Lanes claim that the defendants unlawfully induced them to transfer their stock in their companies to the panel and then unlawfully sold the stock to a third party. The Lanes allege that by their conduct the defendants committed securities fraud and bankruptcy fraud, violated RICO, and breached fiduciary duties under federal law. The Lanes have previously sued the two panel members regarding the same events and were denied any relief. We find that the Lanes' claims against the two panel members are barred by res judicata and that the remaining claims against their attorney are without merit for reasons to be discussed. Accordingly, we affirm.
 
 I. BACKGROUND
 
 2
 Because we are reviewing the district court's grant of summary judgment and motions to dismiss for failure to state a claim, we will view the facts in the light most favorable to the Lanes, the non-moving party.
 
 
 3
 Over the course of 35 years Clift and Dorothy Lane founded and developed a large poultry business consisting of Lane Processing, Inc., Dexter Farms, Dexter Processing, Inc., and Lane Poultry of Carolina, Inc. (hereinafter "the Lane Companies" or "the Companies"). The Lane Companies eventually encountered severe financial difficulties, and in November 1982 the Lanes and the Companies filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. In July 1984 the bankruptcy court approved a reorganization plan, which, among other things, established a three-person panel to assist the Lanes in reorganizing their business. The panel, chosen by the Lanes, consisted of John Peterson and Edward Covell, both appellees in this case, and Walter Minger, who is not a party herein. William Sullivan, the third appellee in this case, is the attorney the Lanes hired to represent them in the bankruptcy proceedings.
 
 
 4
 The Lanes continued to manage their companies after the plan was approved, but their financial condition worsened. In May 1985 a creditor sent a notice of default to the Lanes. Pursuant to the terms of the reorganization plan, if the default was not cured by August 1 the panel would have been obligated to assume the duties of the Board of Directors of the Lane Companies at that time. It was clear that the default would not be cured in time. Mr. Sullivan, the Lanes' attorney, advised the Lanes to allow the panel to assume management before the expiration of the cure period, and the Lanes accepted that advice. However, the panel members refused to assume management early unless the Lanes would relinquish all control of the Lane Companies and convey all of their stock therein to the panelists in trust for the Lane Companies. The Lanes agreed to do this.
 
 
 5
 On July 22, 1985, the Lanes, along with their attorney, met with the members of the panel to conduct these transactions. At that time the Lanes formally resigned from the Companies' Board of Directors, elected the three panelists to those positions, and conveyed their stock in the Companies in a stock transfer agreement to the panelists as trustees under a Declaration of Trust. The Declaration of Trust, which was executed only by the panelists, stipulated that the stock would be held in trust by the panelists as trustees for the benefit of the Lane Companies' employees, but gave the panelists discretion to distribute the trust's assets. The Lanes now claim that because of this discretion the panelists were actually both the trustees and the beneficiaries of the trust and thus the actual owners of the Lane Companies.
 
 
 6
 In May 1986 the panel sold the Lane Companies stock to Tyson Foods, Inc. (hereinafter "Tyson") for $35 million. According to the Lanes, the panelists had reached a secret agreement with Tyson in mid-1985 to buy the Companies from the Lanes and then sell them to Tyson. The panelists reached this agreement with Tyson without any competitive bidding and actually rejected better offers. The panelists never informed the bankruptcy court of the stock transfer from the Lanes to the panel or the sale of the Companies to Tyson.
 
 
 7
 In 1986 the Lanes sued the three panelists in federal district court, alleging that they breached their fiduciary duties under Arkansas law and requesting the court to impose a constructive trust in the Lanes' behalf on the proceeds of the sale of the stock to Tyson. The district court denied all relief. On appeal, a panel of the Eighth Circuit affirmed. Lane v. Peterson, 851 F.2d 193 (8th Cir.1988) (hereinafter "Lane I ").
 
 
 8
 The Lanes then filed this suit against Peterson, Covell, and Sullivan, asserting claims under: (1) Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1988), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10 b-5 (1988), which prohibits any person from making misleading statements or omissions as to any material fact in connection with the purchase or sale of securities; (2) Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a) (1988), which prohibits misleading statements or omissions in connection with the offer or sale of securities; (3) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968 (1988), which prohibits certain racketeering activities; (4) 18 U.S.C. Sec. 152 (1988), which imposes criminal penalties against any person who knowingly or fraudulently attempts to obtain any money or property for acting or forbearing to act in any case under title 11; (5) 18 U.S.C. Sec. 154 (1988), which imposes criminal penalties on an officer of the court in a bankruptcy proceeding who knowingly purchases any property of the estate of which he is an officer in a case under title 11; and (6) 11 U.S.C. Sec. 1127(b) (1988), which provides for modification of reorganization plans under title 11.
 
 
 9
 In its first memorandum opinion the district court granted the defendants' motion to dismiss the Sec. 17(a) securities fraud claim and the RICO claim for failure to state a claim upon which relief could be granted. The district court held that no Sec. 17(a) claim was stated because there is no implied private right of action under Sec. 17(a) and also because only defrauded purchasers, rather than defrauded sellers, may sue under the statute. The district court dismissed the RICO claim because the Lanes failed to allege that the defendants engaged in multiple fraudulent schemes as required in this circuit at that time under RICO. Lane v. Peterson, No. 88-2145, slip op. at 13-16 (W.D.Ark. Dec. 23, 1988).[2]
 
 
 10
 Also in its first opinion, the district court dismissed the Sec. 10(b) securities fraud claim as to Peterson and Covell, holding that the issues addressed in those claims were decided in Lane I and were thus barred by collateral estoppel. Id. at 20. The Lanes later voluntarily dismissed their Sec. 10(b) claim against Sullivan. See Lane v. Peterson, No. 88-2145, slip op. at 5 n. 3 (W.D.Ark. April 15, 1989).
 
 
 11
 In its second memorandum opinion, the district court granted the defendants' motion for summary judgment on the Lanes' claims under 18 U.S.C. Secs. 152 and 154. The Lanes' Sec. 152 claim was based on the allegation that the panelists agreed to succeed to the management of the Companies before the end of the cure period only if the Lanes gave up all of their stock in the Companies. Thus, the complaint alleges, the panelists attempted to obtain property for acting or forbearing to act in a case under title 11 in violation of Sec. 152. The court held that the stock transfer agreement did not occur in a "case under title 11" as required by the statute. Id. at 10. The district court treated the Sec. 154 claim as "essentially a claim for common-law breach of fiduciary duty" and held that that issue was litigated in Lane I and was thus barred by collateral estoppel. The district court also held that since the Lanes' fiduciary duty claim against Sullivan was derivative of their claims against Peterson and Covell, the fiduciary duty claim against Sullivan should be dismissed along with the claims against his co-defendants. Id. at 11-13.
 
 
 12
 In its final opinion, the district court dismissed the Lanes' claim under 11 U.S.C. Sec. 1127(b), which alleged that the stock transfer agreement amounted to a modification of the reorganization plan that required bankruptcy court approval. The district court ruled that the stock transfer agreement did not constitute a modification. Lane v. Peterson, No. 88-2145, slip op. at 8 (W.D.Ark. June 20, 1989).
 
 
 13
 We affirm the district court's dismissal of all claims against the defendants, although, in some respects, upon grounds different from those relied upon by the district court.
 
 II. DISCUSSION
 A. Preclusive Effect of Lane I
 
 14
 We must first determine the extent to which the claims raised in this case are barred by this court's prior decision in Lane I. We examine two preclusion principles: res judicata (claim preclusion) and collateral estoppel (issue preclusion).[3] "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Thus, res judicata precludes the relitigation of a claim on grounds that were raised or could have been raised in the prior action. Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir.1982). "Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." Parklane Hosiery, 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5 (citations omitted).
 
 
 15
 Originally, collateral estoppel was limited by the principle of mutuality, which provided that "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." Id. at 326-27, 99 S.Ct. at 649-50 (footnote omitted). However, the mutuality requirement under federal law has been abandoned. Now, a party may rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action. Id. at 332, 99 S.Ct. at 652. See also 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4464 (1981).
 
 
 16
 The doctrine of res judicata, by contrast, continues to include the requirement that only parties or privies to parties bound by the first judgment may rely on its preclusive effect. This is true not because of the mutuality concept, once required in collateral estoppel, but because of the notion inherent in the doctrine of res judicata that claims against different parties necessarily are different claims. See Restatement (Second) of Judgments Sec. 49 and comment a (1980) (discussing the principle that a plaintiff injured by two or more persons has a separate claim against each wrongdoer); Montana v. United States, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) ("Preclusion of ... nonparties falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action.").
 
 
 17
 The district court in this case held that the Lanes' Sec. 10(b) claims and their claims that the defendants breached their fiduciary duties were barred by collateral estoppel. The district court did not hold that any of the Lanes' claims were barred by the doctrine of res judicata. We believe that the preclusive effect of Lane I is broader than recognized by the district court. We may affirm a judgment on any ground supported by the record even if not relied upon by the district court, Nichols v. City of St. Louis, 837 F.2d 833, 835 n. 2 (8th Cir.1988); Brown v. St. Louis Police Dept., 691 F.2d 393, 396 (8th Cir.1982), cert. denied, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983), and we do so in this case. We hold that all of the claims asserted against Peterson and Covell (the two panel members) are based on the same cause of action that was asserted in Lane I and are thus barred by res judicata.[4]
 
 
 18
 Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Murphy v. Jones, 877 F.2d 682, 684 (8th Cir.1989). Neither party disputes that the first two requirements are met in this case. The Lanes claim, and the district court apparently believed, that the third requirement is not met because this case involves claims different from those asserted in Lane I. We believe otherwise.
 
 
 19
 This circuit has adopted the position of the Restatement (Second) of Judgments in determining whether two causes of action are the same for res judicata purposes. Generally, under this approach a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim. See Murphy, 877 F.2d at 684-85; Hufsmith v. Weaver, 817 F.2d 455, 461 (8th Cir.1987); Poe, 695 F.2d at 1105-06. The Restatement (Second) of Judgments provides:
 
 
 20
 (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
 
 
 21
 (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
 
 
 22
 Restatement (Second) of Judgments Sec. 24 (1980).
 
 
 23
 With this approach to the "same claim" concept in mind, we compare the claims asserted in Lane I with those in the instant case. In Lane I the Lanes claimed that the panelists breached fiduciary duties under Arkansas law by acquiring the Companies' stock and failing to advise them of Tyson's interest in purchasing the Lane Companies. The Lanes requested the court to impose a constructive trust on the proceeds of the sale to Tyson for these reasons and also because the July 22 transactions did not reflect the parties' oral agreement, the stock transfer was not supported by adequate consideration, and to prevent unjust enrichment of the panelists and the Lane Company employees.
 
 
 24
 In the instant case the Lanes claim that the defendants violated a variety of federal laws by their conduct. They claim that by acquiring the stock the defendants breached their fiduciary duties under federal law. The Lanes assert that the defendants violated federal securities laws by failing to disclose that the panelists were the actual beneficiaries under the Declaration of Trust, that Sullivan was acting as counsel to the panel while he was counsel to them, and that the panel had agreed to sell the Lane Companies to Tyson. The Lanes claim that by this same conduct the defendants violated RICO. Additionally, the Lanes claim herein that the defendants violated 18 U.S.C. Sec. 152 by requiring them to transfer their stock as a condition of the panelists' agreement to assume control of the Lane Companies prior to the end of the cure period. Finally, the Lanes assert that the defendants violated 11 U.S.C. Sec. 1127(b) by failing to notify the bankruptcy court when they modified the reorganization plan by executing the stock transfer agreement and the Declaration of Trust. As a remedy in this case the Lanes ask the court to order the defendants to disgorge any profits they realized from the sale of the Lane Companies to Tyson. They further seek damages for the loss they suffered by the defendants' breaches of their fiduciary duties.
 
 
 25
 Applying the Restatement (Second)'s definition of "same claim", we think it indisputable that Lane I and this case present the same claim for res judicata purposes. The cases involve precisely the same nucleus of operative facts: the Lane Companies' reorganization in bankruptcy, the establishment of the panel, the stock transfer agreement and Declaration of Trust, and the sale of the Lane Companies to Tyson. The gist of all of the claims in this case and those in Lane I is that the defendants wrongfully acquired and sold the Lane Companies and should now be made to disgorge the proceeds.
 
 
 26
 Concededly, some of the claims asserted here would involve some evidence that perhaps was not relevant in Lane I. For example, the district court noted that the Lanes' instant claim under 11 U.S.C. Sec. 1127(b) would require "proof not only that defendants deceived plaintiffs in various ways, but also that they wrongfully failed to notify the bankruptcy court of such activities--an entirely different factual issue requiring different proof [from that involved in Lane I ]." Lane v. Peterson, No. 88-2145, slip op. at 22-23 (W.D.Ark. Dec. 23, 1980). We recognize this; what we take issue with is the conclusion that where the second action would involve proof of some facts that were not operative in the prior suit res judicata necessarily does not apply. The Restatement (Second)'s "transactional" approach to res judicata contemplates that there may be some variance in the proof required for claims that are nonetheless the "same claim" for res judicata purposes. The operative question in each case is whether the claims arise out of the same nucleus of facts. As stated in the Restatement (Second) of Judgments,
 
 
 27
 [t]he present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.
 
 
 28
 Restatement (Second) of Judgments Sec. 24, comment a at 197 (1980).[5]
 
 
 29
 Similarly, the Lanes' reliance in this suit on different substantive law and new legal theories does not preclude the operation of res judicata. One of the merits of the Restatement (Second)'s approach is that it prevents parties from suing on a claim that is in essence the same as a previously litigated claim but is dressed up to look different. Thus, where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim. See Mills v. Des Arc Convalescent Home, 872 F.2d 823, 826-27 (8th Cir.1989) (prior Title VII claim barred Sec. 1981 claim); Chester v. St. Louis Housing Authority, 873 F.2d 207, 208-09 (8th Cir.1989) (procedural due process claim barred later claim for Title VII and equal protection violations); Hufsmith, 817 F.2d at 460-61 (prior Sherman Act claim barred tortious interference with contract claim); Headley v. Bacon, 828 F.2d 1272, 1275 (8th Cir.1987) (prior Title VII claim and later claims based on 42 U.S.C. Secs. 1982, 1983, and 1985 were the same for res judicata purposes); Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449-50 (8th Cir.1979) (claim against union for breach of duty of fair representation barred later action for violation of free speech and assembly rights). See also Restatement (Second) of Judgments Sec. 24 comments a, b, & c (1981).
 
 
 30
 In sum, we hold that the claims in this case arise out of the same nucleus of operative facts involved in Lane I. Thus, the doctrine of res judicata bars the Lanes' claims against Peterson and Covell, the two defendants herein who were parties in Lane I. However, this holding does not dispose of the claims against Sullivan because he was neither a party nor privy to a party in Lane I. We thus turn to those claims.
 
 B. Claims against Sullivan
 
 31
 The Lanes' claims against Sullivan do not warrant extended discussion. The Lanes voluntarily dismissed their Sec. 10(b) securities fraud claim against Sullivan after the district court held that those claims were meritless as against Peterson and Covell. The Lanes have apparently abandoned their Sec. 17(a) securities fraud claim against Sullivan. In any event, that claim is without merit because, as the district court found, the Eighth Circuit has held that there is no implied private right of action under Sec. 17(a) of the Securities Act of 1933. See Krause v. Perryman, 827 F.2d 346, 349 (8th Cir.1987).
 
 
 32
 Further, it appears from the pleadings and motions that the claims based on 18 U.S.C. Sec. 152 are asserted only against Peterson and Covell. That is, in those claims the Lanes complain that only Peterson and Covell acted unlawfully in receiving the stock for acting or forbearing to act in a case under title 11. See First Amended Complaint at 12-13, Appendix at 129-30; Plaintiffs' Response to Defendants' Motion for Summary Judgment at 2, Appendix at 197.
 
 
 33
 The Lanes' fiduciary duty claim against Sullivan will also be dismissed. In that claim the Lanes allege that Sullivan is liable for participating with the panelists in the events culminating in the stock transfer on July 22, 1985. That issue was litigated in Lane I, where this court found that the panelists did not breach fiduciary duties by acquiring the stock. Lane I, 851 F.2d at 197. Therefore, the Lanes' claim that Sullivan breached fiduciary duties by participating with the panelists is barred by collateral estoppel.
 
 
 34
 The district court dismissed the Lanes' RICO claim for failure to state a claim upon which relief could be granted, and we affirm that dismissal. To state a valid RICO claim, the Lanes were required to allege that Sullivan engaged in a pattern of racketeering activity wherein the racketeering activity, or, predicate acts, were related and amounted to, or pose a threat of, continued criminal activity. See H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); Atlas Pile Driving Co. v. DiCon Financial Co., 886 F.2d 986, 993-94 (8th Cir.1989). In this regard the Lanes claim that Sullivan engaged in fraud connected to a case under title 11 and in the sale of securities, which are predicate acts under RICO. However, the Lanes do not allege that Sullivan's acts amounted to or pose a threat of continued criminal activity. Further, the Lanes do not sufficiently allege that Sullivan derived income from the alleged pattern of racketeering activity as required by RICO.
 
 
 35
 Finally, we affirm the district court's dismissal of the Lanes' claims based on 11 U.S.C. Sec. 1127(b). The district court reached the merits of this claim and concluded that the stock transfer agreement did not constitute a modification of the plan. We agree with that conclusion, but we believe that the Lanes' Sec. 1127(b) claim suffers from a more fundamental problem. Section 1127 is not a statute which creates a right of action or imposes penalties in the event that a reorganization plan is modified without bankruptcy court approval. It provides standing to reorganized debtors or proponents of a plan to modify a plan after confirmation and provides that such modification becomes the plan if the court confirms it. See Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 233 (4th Cir.1987). We do not believe that Sec. 1127(b) provides a right of action by a reorganized debtor against a party who allegedly conducted transactions that effected a modification of the plan without court approval.
 
 
 36
 To some extent, the Lanes' claims against Sullivan, even if valid, would be barred by the collateral estoppel effect of Lane I. Although the issue of Sullivan's liability was not actually litigated in Lane I, some of the factual findings in that case regarding the panelists' liability substantially undermine the Lanes' instant claims against Sullivan. We have chosen to dismiss these claims on their merits rather than on collateral estoppel grounds primarily for brevity's sake. We do not suggest that there are not other bases upon which the claims against Sullivan could be dismissed.
 
 III. CONCLUSION
 
 37
 In sum, we affirm the district court's dismissal of the Lanes' claims against Peterson, Covell, and Sullivan. All claims against Peterson and Covell are barred by the doctrine of res judicata because those claims were or should have been asserted in Lane v. Peterson, 851 F.2d 193 (8th Cir.1988). The claims against Sullivan are without merit and are also dismissed.
 
 
 
 [1]
 The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas
 
 
 [2]
 The district court later noted that after its first opinion dismissing the Lanes' RICO claim the Supreme Court in H.J. Inc. v. Northwestern Bell Telephone Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) rejected the Eighth Circuit's holding that proof of multiple schemes is required to fulfill RICO's "pattern" requirement. The district court, however, did not disturb its dismissal of the Lanes' RICO claim because it found that the Lanes nonetheless failed to allege any illegal acts that would constitute racketeering activity under RICO. Lane v. Peterson, No. 88-2145, slip op. at 11-12 (W.D.Ark. Aug. 2, 1989)
 
 
 [3]
 A point about terminology is worth making. In its generic sense "res judicata" is a broad term that encompasses both issue preclusion and claim preclusion. See Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); Hickman v. Electronic Keyboarding, Inc., 741 F.2d 230, 232 n. 2 (8th Cir.1984); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4402 (1981). However, the term "res judicata" is now often used in a narrower sense, as referring only to claim preclusion and not to collateral estoppel. See Migra, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1. Thus, courts now often speak of res judicata and collateral estoppel as separate principles, the former referring only to claim preclusion and the latter referring to issue preclusion. In this opinion we use the term "res judicata" in this narrow sense
 
 
 [4]
 Mr. Sullivan cannot rely on res judicata because he was not a party or privy to a party in Lane I. The claims against him are addressed separately in this opinion
 
 
 [5]
 This is not to say that differences in proof should never be considered as a relevant factor in determining whether two claims are the same. Significant differences in necessary proof may indicate that the claims simply do not overlap significantly and thus are not based on the same nucleus of facts. What we reject is a hard-and-fast rule regarding different proof that invites parties opposing preclusion to isolate particular bits of differing evidence arising from the same nucleus in an attempt to make the second claim look entirely different