# United States Court of Appeals for the Federal Circuit

---

**SUPERIOR INDUSTRIES, LLC,**
*Plaintiff-Appellant,*

**v.**

**THOR GLOBAL ENTERPRISES LTD,**
*Defendant-Appellee,*

---

2011-1549

---

Appeal from the United States District Court for the District of Minnesota in Case No. 10-CV-2524, Chief Judge Michael J. Davis.

---

Decided: November 27, 2012

---

JOHN M. WEYRAUCH, Dicke, Billig & Czaja, PLLC, of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief were PATRICK G. BILLIG and PAUL P. KEMPF.

CHRISTOPHER T. HOLLAND, Krieg Keller Sloan Reilley & Roman LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief was MATTHEW T. PETERS.

---

Before RADER, *Chief Judge*, MAYER and SCHALL, *Circuit Judges*. Dissenting opinion filed by *Circuit Judge* MAYER.

RADER, *Chief Judge*.

The United States District Court for the District of Minnesota dismissed with prejudice a patent infringement complaint filed by Superior Industries, LLC ("Superior") against Thor Global Enterprises Ltd. ("Thor") in part based on claim preclusion and in part for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Superior Indus., LLC v. Thor Global Enters. Ltd.*, No. 10-CV-2524, 2011 WL 3100335, at *3 (D. Minn. July 22, 2011). Because Superior's prior trademark infringement action did not arise from the same operative facts, and because Superior's patent infringement complaint meets the pleading requirements of Form 18 of the Federal Rules of Civil Procedure, this Court reverses and remands for further proceedings. This court affirms the dismissal of Superior's claims of indirect infringement of U.S. Patent No. 7,618,231.

I

Superior is the exclusive owner by assignment of U.S. Patent Nos. 7,284,947 (the "'947 Patent"), 7,470,101 (the "'101 Patent"), and 7,618,231 (the "'231 Patent") (collectively, the "Superior Patents"). The Superior Patents claim priority to an October 26, 2006 application and cover a "Braced Telescoping Support Strut and System." This claimed system supports a portable conveyor assembly. Portable conveyors transport and stockpile rock, sand, grain, and other aggregate material. Superior alleges its patents claim an improved undercarriage system that enables portable conveyors to safely and stably extend to, and operate at, heights above previous conveyors. The invention improves the prior art with cross bracing between the upper and lower support beams

that does not interfere with the extension or retraction of the upper support beams. Superior claims to have coined the term "fully braced" to refer to the new undercarriage. Based on an intent-to-use trademark application filed on October 3, 2007, Superior owns the registered trademark "FB" for height-adjustable bulk material belt conveyors and undercarriage assemblies (U.S. Trademark Registration No. 3,502,855).

Thor is a Canadian company that competes with Superior in the portable conveyor market. On July 12, 2007, Thor filed a U.S. patent application for an "Undercarriage for a Telescopic Frame" (the "Thor Patent Application"), which discloses a telescoping frame similar to that claimed in the Superior Patents.

On October 1, 2007, Thor issued a press release on its website describing a conveyor system with a new "PATENT-PENDING FB Undercarriage" (the "Thor Undercarriage Technology"). The press release states that the "FB (Fully Braced) Undercarriage technology . . . is currently being applied to all new T150-20, T150-12/15, T135-12/15 and T170-5/8/10 ThorStack2™ series telescopic stackers as well as other lifting devices." J.A. 148. The release provides no details about the selling price or other terms of sale for Thor's telescopic stackers. Also in October 2007, Thor distributed point-of-sale displays, identical to the press release, to numerous dealers throughout the United States.

On August 4, 2009, Superior initiated a trademark infringement action in the District of Minnesota (the "2009 Trademark Action"). Superior asserted Thor infringed its registered "FB" trademark through Thor's use of the mark in its press releases and point-of-sale displays. The 2009 Trademark Action ended in a Consent Judgment dated April 7, 2010, which permanently enjoined Thor from

further use of the "FB" trademark in connection with Thor's undercarriage assemblies or portable conveyors.

On June 21, 2010, Superior filed suit against Thor for infringement of Superior's '101 and '231 Patents. Superior's First Amended Complaint alleges that Thor "has been and is directly infringing, actively inducing others to infringe and/or contributing to the infringement of one or more claims of the '101 [and '231] Patent[s] by its unauthorized making, using, offering to sell, selling and/or importing a telescoping conveyor having the Thor Undercarriage Technology in and/or to the United States." J.A. 112–13. The complaint alleges that Thor admitted during the 2009 Trademark Action that it had used "the mark 'FB' in connection with 'multiple sales offerings to customers, dealers and distributors in the United States [for conveyor systems and/or related undercarriage systems], and sold such goods into commerce in the United States'" before Superior's October 3, 2007 intent-to-use application for the "FB" mark. J.A. 112 (quoting Thor's Answer, Affirmative Defenses and Counterclaims in the 2009 Trademark Action) (alterations in original). In April and May 2010, Superior purports to have questioned Thor about its current selling, offering for sale, and/or importing the Thor Undercarriage Technology into the United States. Superior alleges that, in response, it received only "evasive responses and conclusory opinions from Thor that the Thor Undercarriage Technology did not infringe Superior's patents." *Id.*

The district court dismissed Superior's claims for infringement of the '101 Patent on the basis of claim preclusion. The district court noted that Superior "referenced the '947 Patent" in its complaint filed in the 2009 Trademark Action, and found "[t]he only reason the earlier suit did not contain patent allegations is because Superior chose not to make them." *Superior*, 2011 WL 3100335, at

*5. The court found "both lawsuits arise from the same nucleus of operative facts–Thor's offering for sale its FB undercarriage technology in the United States. Both the trademark claims and the patent claims arise from and are based on the October 2007 press releases issued by Thor describing its 'Patent-Pending FB Undercarriage Technology' and the point of sale displays allegedly distributed by Thor to dealers throughout the United States." *Id.*

As to the '231 Patent, the district court determined that claim preclusion did not apply because the '231 Patent did not issue until more than three months after Superior filed its complaint in the 2009 Trademark Action. *Id.* The district court dismissed Superior's claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, however, finding Superior did not state a claim for relief that is plausible on its face. *Id.* at *6. The court found Superior did not plead sufficient factual matter to support its claim that Thor sold or offered for sale infringing products in the United States after the '231 Patent issued. *Id.* The district court held Superior could not rely on Thor's admission in the 2009 Trademark Action that it had sold and offered for sale the Thor Undercarriage Technology, because the admitted activities predated issuance of the '231 Patent. *Id.*

## II

Claim preclusion is an issue of law reviewed without deference. *In re Bose Corp.*, 476 F.3d 1331, 1334 (Fed. Cir. 2007). The law of the regional circuit—in this case the United States Court of Appeals for the Eighth Circuit—applies to the general principles of claim preclusion. *See Mars, Inc. v Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618 (Fed. Cir. 1995). Federal Circuit law, however, applies to "issues of substantive patent law

and certain procedural issues pertaining to patent law." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008). Thus, this court looks to Federal Circuit precedent to resolve underlying issues of substantive patent law, such as the operative facts involved in a claim for patent infringement. *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (applying Federal Circuit law to determine whether two claims for patent infringement are identical for claim preclusion purposes).

This court reviews without deference a district court's Rule 12(b)(6) dismissal for failure to state a claim. *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). "The question whether a Rule 12(b)(6) motion was properly granted is a purely procedural question not pertaining to patent law, to which this court applies the rule of the regional circuit." *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009) (quoting *Gen. Mills, Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1373 (Fed. Cir. 2007)) (alterations omitted).

## III

The doctrine of res judicata, more specifically referred to as claim preclusion, bars a party from bringing "repetitive suits involving the same cause of action." *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001) (citation omitted). Under Eighth Circuit law, claim preclusion "bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990).

Superior and Thor do not dispute that the 2009 Trademark Action involved the same parties and resulted

in a final judgment on the merits entered by a court of competent jurisdiction. *See Superior Indus., LLC v. Thor Global Enters. Ltd.*, No. 09–cv-02035 (D. Minn. Apr. 7, 2010) (Consent Judgment in the 2009 Trademark Action). Superior's claim for patent infringement is thus barred by claim preclusion if the 2009 Trademark Action constitutes the "same cause of action."

Two cases involve the same cause of action when they arise from the same "nucleus of operative facts"—i.e., when the same "transaction or series of transactions" forms the basis for the two suits. *Lane*, 899 F.2d at 742. The Eighth Circuit determines whether two claims arise from the same set of transactional facts by asking whether the facts "are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting Restatement (Second) of Judgments § 24 (1980)).

A claim in a second action may still be precluded even if it involves proof of some facts that were not operative for the prior action. *Id.* at 743. Significant differences in the necessary proof, however, may indicate that the two claims simply are not based on the same nucleus of operative fact. *Id.* at 743 n.5. The Eighth Circuit has adopted the approach of the Restatement (Second) of Judgments, which is:

> to see [the] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence

needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

*Id.* at 743 (quoting Restatement (Second) of Judgments § 24 cmt. a (1980)). Thus, claim preclusion prevents a plaintiff from suing a second time on a new legal theory based on the same underlying conduct. *Id.* at 744 (holding suit for breach of fiduciary duties under federal law, and violation of federal securities and bankruptcy laws, among other legal theories, was barred by a prior suit for breach of fiduciary duties under Arkansas state laws based on same events); *see also, e.g.*, *Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826–27 (8th Cir. 1989) (Title VII claim barred later § 1981 claim based on same wrongful termination); *Chester v. St. Louis Hous. Auth.*, 873 F.2d 207, 208–09 (8th Cir. 1989) (procedural due process claim arising from plaintiff's demotion and resignation barred later Title VII and equal protection act claims based on same facts).

Thor and the district court emphasize that Superior "could have brought" its claim for infringement of the '101 Patent at the time it filed the 2009 Trademark Action because the patent had issued by that time. *Superior*, 2011 WL 3100335, at *5. Although cases frequently state that claim preclusion prevents parties "from relitigating issues that were or *could have been raised*" in a prior action, *see, e.g.*, *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added); *Lane*, 899 F.2d at 741, such statements require some additional context. Claim preclusion only applies to repetitious suits involving the same cause of action. *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597–98 (1948) (explaining that in a subsequent suit on the same cause of action, parties are bound by matters that could have been raised in the prior litigation, but in a subsequent suit on a different

cause of action, parties are free to litigate points which might have been tendered in the first suit); Restatement (Second) of Judgments § 24 cmt. a (1980) ("'Claim,' in the context of res judicata, has never been broader than the transaction to which it related"); *Lane*, 899 F.2d at 742 (holding claim preclusion requires the "same cause of action" to be involved in both suits). Thus, in discussions of claim preclusion, "the phrase 'claims that were raised or could have been raised,' refers to legal theories arising out of the same transactional nucleus of facts." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 n.2 (9th Cir. 2005).

Thus, claim preclusion does not arise merely because the plaintiff was aware of independent facts that gave rise to a separate cause of action against the defendant at the time it brought suit. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1325–26 (Fed. Cir. 2008). In *Acumed*, this court reversed a decision finding a patent infringement claim precluded where the patentee previously sued the defendant for infringement of the same patent, but on a different product. *Id.* at 1326. At the time of the first suit, the record in *Acumed* shows that the patentee knew that the defendant was selling both products in the United States. Nonetheless, this did not preclude the second suit because it arose from different transactional facts—namely, the sale of a different product. *Id.* at 1325. Thor has not cited any Eighth Circuit cases that suggest claim preclusion ever applies to bar litigation of a claim that arises from a different transaction or series of transactions than was at issue in a prior litigation between the same parties.

In this case, the 2009 Trademark Action does not preclude Superior's patent infringement claim because the two claims arise from clearly separate transactions. In other words, these separate cases under separate laws do

not constitute the same cause of action. The district court erred in finding that "both lawsuits arise from the same nucleus of operative facts—Thor's offering for sale its FB undercarriage technology in the United States." *Superior*, 2011 WL 3100335, at \*5. Superior's trademark claims arose from Thor's use of the FB mark in advertising—not from actual sales or offers for sale of the Thor Undercarriage Technology in the United States. Stated in other terms, Superior's patent infringement claim arises from sales, offers to sell, or importation of goods that allegedly infringe the '101 Patent—not from the advertising or use of the FB mark at issue in the 2009 Trademark Action.

A federal trademark infringement claim involves the defendant's use of the plaintiff's registered mark "in connection with the sale, offering for sale, distribution, *or advertising* of any goods or services" in a manner "likely to cause confusion, to cause mistake, or to deceive." 15 U.S.C. § 1114 (emphasis added); *see also Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed. Cir. 2000). Superior's trademark claims were not premised on actual sales or offers for sale of conveyor or undercarriage systems in the United States, much less on sales of the specific technology covered by the Superior Patents. Superior specifically alleged in the 2009 Trademark Action—and Thor admitted—that Thor had *not* sold conveyor or undercarriage systems bearing the "FB" mark in the United States. Thus, no "sale" of "goods or services" could have provided the statutory basis for a trademark infringement claim under 15 U.S.C. § 1114. Instead, the series of transactions that gave rise to the 2009 Trademark Action was Thor's use of the FB mark in the point-of-sale displays and press releases advertising Thor's portable conveyor systems.

A claim for patent infringement, by contrast, arises when an unauthorized party "makes, uses, offers to sell,

or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent . . ." 35 U.S.C. § 271(a). An "offer for sale" sufficient to give rise to liability for patent infringement must meet the traditional contract law definition of that term. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). Thus, "the defendant must communicate a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (internal quotations and alterations omitted). Communications that describe the allegedly infringing materials but "do not contain any price terms . . . on their face . . . cannot be construed as an 'offer' which [the offeree] could make into a binding contract by simple acceptance." *Id.*

Thor's advertising at issue in the 2009 Trademark Action did not constitute an "offer for sale" for purposes of patent infringement because it contains no price terms. *See* J.A. 148–50. It cannot be the "operative fact" that gives rise to Superior's patent infringement claim. To be sure, Superior's complaint for patent infringement refers to the same advertisements for the Thor Undercarriage Technology that were at issue in the 2009 Trademark Action, as well as to Thor's admissions in that action that it sold such undercarriage systems in the United States before Superior's use of the FB trademark (and prior to issuance of the '101 Patent). While these are not the operative facts that give rise to Superior's claim for patent infringement, they may support the inference that, after Superior's '101 and '231 Patents issued, Thor continued to sell, offer for sale, or import into the United States the allegedly infringing goods.

In sum, Superior's claims for trademark infringement and patent infringement constitute separate causes of action. Because the district court erred in concluding that claim preclusion barred Superior's claim for infringement of the '101 Patent, this court reverses and remands for further proceedings.

IV

The district court dismissed Superior's claim for infringement of the '231 Patent under Rule 12(b)(6), finding Superior failed to plead sufficient factual matter to state a claim for relief that is plausible on its face. *Superior*, 2011 WL 3100335, at \*6; *see Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

In a complaint for patent infringement under § 271(a), Form 18 of the Federal Rules of Civil Procedure provides the pleading standard. *In re Bill of Lading Transmission & Processing Sys. Patent Litig. (R+L Carriers, Inc. v. DriverTech LLC)*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Form 18 requires "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *Id.* (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (alteration in original)). Although the parties do not discuss the Form 18 pleading standard, this court acknowledges that standard to review the dismissal. *Id.*

Superior's First Amended Complaint (1) alleges jurisdiction, J.A. 109 ¶¶ 3–5; (2) states that Superior owns the '101 and '231 Patents, J.A. 110–11 ¶¶ 8–10; (3) states that Thor is infringing the '101 and '231 patents by selling, offering to sell, or importing "a telescoping conveyor

having the Thor Undercarriage Technology" into the United States, J.A. 112–13, ¶¶ 17, 22, and Thor's press releases attached to the complaint provide model numbers for the accused products, J.A. 148–150; (4) gives Thor notice of its infringement, *see* 35 U.S.C. § 287(a); and (5) includes a prayer for relief in the form of an injunction and damages, J.A. 114. In addition, Superior's First Amended Compliant indicates that Thor also received written notice of its alleged infringement through communications from Superior in 2010. J.A. 112 ¶ 15 ("Subsequent communications in April and May 2010 by and between Superior and Thor to confirm whether Thor was selling, offering for sale and/or importing Thor Undercarriage Technology into the United States were met with evasive responses and conclusory opinions from Thor *that the Thor Undercarriage Technology did not infringe Superior's patents.*") (emphasis added). This correspondence also served to give Thor notice of Superior's claim of infringement. The complaint therefore adequately pleads direct infringement of the '101 and '231 Patents. This allegation contains each element of a claim for direct patent infringement.

The complaint also alleges induced and contributory infringement of the '101 and '231 Patents. Form 18 does not determine the sufficiency of pleading for claims of indirect infringement. *R+L Carriers*, 681 F.3d at 1336. Rather, the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply to such claims. *Id.* This court finds Superior's complaint falls far short of pleading facts necessary to state a plausible claim for either induced or contributory infringement.

Superior does not allege that the accused products are "especially made or especially adapted for use in an infringement of such patent, and not a staple article or

commodity of commerce suitable for substantial noninfringing use" as required by 35 U.S.C. § 271(c). Similarly, Superior does not allege any facts to support a reasonable inference that Thor specifically intended to induce infringement of the '231 Patent or that it knew it had induced acts that constitute infringement. *See R+L Carriers*, 681 F.3d at 1339. This court therefore affirms the dismissal of Superior's claims of indirect infringement under 35 U.S.C. §§ 271(b) and (c).

Because Superior's First Amended Complaint meets the pleading standard of Form 18, this court reverses the district court's dismissal of Superior's claims for direct infringement of the '231 Patent, but affirms the dismissal of Superior's claims for indirect infringement.

## V

Accordingly, the judgment of the district court is affirmed-in-part, reversed-in-part, and remanded.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Costs to Superior.

# United States Court of Appeals
# for the Federal Circuit

---

**SUPERIOR INDUSTRIES, LLC,**
*Plaintiff-Appellant,*

**v.**

**THOR GLOBAL ENTERPRISES LTD.,**
*Defendant-Appellee.*

---

2011-1549

---

Appeal from the United States District Court for the District of Minnesota in case no. 10-CV-2524, Chief Judge Michael J. Davis.

---

MAYER, *Circuit Judge*, dissenting.

I respectfully dissent. Res judicata bars the patent infringement claims asserted by Superior Industries, LLC ("Superior") against Thor Global Enterprises Ltd. ("Thor") because they arise from the same nucleus of operative facts that gave rise to its 2009 trademark infringement action.

## I.

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added); *see also Salazar v. Buono*, 130 S. Ct.

1803, 1815 (2010) (Res judicata applies "not only as to every matter which was offered and received to sustain or defeat [a] claim or demand, but as to any other admissible matter *which might have been offered* for that purpose." (citations and internal quotation marks omitted) (emphasis added)); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it *should have been advanced* in an earlier suit." (emphasis added)). Res judicata bars Superior's claims of infringement based upon U.S. Patent No. 7,470,101 (the "'101 patent") because those claims could and should have been asserted during the 2009 trademark infringement action it brought against Thor.*

In October 2007, Thor, a Canadian company, posted a press release on its website touting the advantages of its "patent-pending" fully-braced undercarriage for portable conveyor systems. Thor stated that its "FB (Fully Braced) Undercarriage technology provides a lifting system that is not only stronger by design, but has a structural integrity beyond any other undercarriage on the market today." Thor further asserted that its "patent-pending FB technology will 'once again revolutionize the way telescopic stackers are made.'"

Superior subsequently registered the mark FB for height-adjustable bulk material belt conveyors and undercarriage assemblies. *See* U.S. Trademark Registration No. 3,502,855. In 2009, Superior sent Thor a letter demanding that Thor cease further unauthorized use of its

---

* I express no view on the issue of whether the district court correctly dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Superior's claim alleging direct and indirect infringement of U.S. Patent No. 7,618,231. *See ante* at 11-12.

FB mark. Thor responded to the letter by stating that it had superior rights to the FB mark because it had previously used that mark on "point-of-sale" displays which it had "distributed to numerous established dealers and sales contacts throughout the United States." These point-of-sale displays, like Thor's previous press release, described the advantages of its "patent-pending FB undercarriage" technology.

On August 4, 2009, Superior brought a trademark infringement action against Thor. Instead of including patent infringement claims in its complaint, however, Superior waited until June 2010—two months after it obtained a consent judgment in the trademark action—before bringing its patent infringement suit. Where, as here, a litigant brings repetitive suits involving the same alleged misconduct, res judicata serves to bar assertion of the subsequently-filed claim. *See Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826 (8th Cir. 1989) (Where two claims "emerge from the same transaction and share precisely the same nucleus of operative facts," a litigant "may not assert them serially, in successive actions, but must advance all at once on pain of bar." (citations and internal quotation marks omitted)).

Res judicata applies when three requirements are met: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim by a court of competent jurisdiction; and (3) two claims involve "the same cause of action" in that they arise from "the same nucleus of operative facts." *First Nat'l Bank v. First Nat'l Bank S.D.*, 679 F.3d 763, 767 (8th Cir. 2012) (citations and internal quotation marks omitted); *see Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004); *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). If these three elements are satisfied, "res

judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding." *King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992).

As the majority correctly recognizes, the first two prerequisites for the application of res judicata are satisfied here. There is no dispute that the same parties, Superior and Thor, were involved in both the earlier trademark action and in the current patent infringement proceedings. Nor is there any doubt that the consent judgment in the trademark case was a "final judgment on the merits" for res judicata purposes. *See Envtl. Prot. Agency v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990); *see also Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) ("It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a *res judicata* analysis.").

The majority errs when it concludes that Superior's patent infringement action is not based upon the same nucleus of operative facts as its earlier trademark infringement suit. Factors important in determining whether two claims arise from the same set of operative facts include whether they "are related in time, space, origin, or motivation" and "whether they form a convenient trial unit." *Lane*, 899 F.2d at 742 (citations and internal quotation marks omitted). Here, Superior's patent and trademark claims both relate to Thor's fully-braced undercarriages for portable conveyer systems, which were advertised and allegedly offered for sale in 2007. The fact that Superior's trademark and patent infringement claims are very closely aligned is evidenced by the fact that Superior's trademark complaint expressly referenced U.S. Patent No. 7,284,947, which is the parent of the '101 patent. The '101 patent was prosecuted by the

same attorney who represented Superior in both the 2009 trademark action and in the present case. Accordingly, as the district court correctly concluded, "the trademark and patent claims would have formed a convenient trial unit," and should have been asserted in the same proceeding. *Superior Indus., L.L.C. v. Thor Global Enters. Ltd.*, No. 10-CV-2524, 2011 WL 3100335, at *5 (D. Minn. July 22, 2011) ("*District Court Decision*"); *see also Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("[A] party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together.").

## II.

The majority asserts that res judicata should not be applied to bar Superior's patent claims because the evidence required to prove trademark infringement is not the same as that required to establish patent infringement. *See ante* at 10-11. To the contrary, however, a party's reliance "on different substantive law and new legal theories does not preclude the operation of res judicata." *Lane*, 899 F.2d at 744; *see Mills*, 872 F.2d at 826-27 (concluding that a litigant's previous Title VII claim barred her subsequent claim under 42 U.S.C. § 1981); *Chester v. St. Louis Hous. Auth.*, 873 F.2d 207, 208-09 (8th Cir. 1989) (concluding that a party's previous procedural due process claim barred his subsequent claim alleging Title VII and equal protection clause violations); *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988) (explaining that for purposes of claim preclusion, a "'[c]laim' is defined broadly in transactional terms, regardless of the number of substantive theories advanced in the multiple suits by the plaintiff"). Thus, regardless of

whether "a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 744. Accordingly, notwithstanding the fact that patent and trademark infringement invoke different areas of substantive law, Superior was required to bring its patent action concurrently with its trademark suit because both claims relate to the same advertising materials that Thor distributed in 2007.

The majority asserts that Thor's 2007 advertising materials could not be the "'operative fact'" that gave rise to its patent infringement claim because those materials did not constitute "offers to sell." *Ante* at 11. This reasoning is not persuasive. Notwithstanding the fact that the 2007 advertising materials did not contain pricing information, such materials were clearly sufficient to put Superior on notice that it had a potential patent infringement claim. The advertising materials, which were "distributed to numerous established dealers and sales contacts throughout the United States," touted the advantages of Thor's fully-braced undercarriage system and contained pictures as well as a detailed description of Thor's products. Given that Superior knew that: (1) there were clear similarities between Thor's advertised products and those disclosed in the '101 patent; and (2) advertisements describing Thor's "patent-pending [fully-braced] undercarriage" had been widely distributed within the United States, Superior's argument that it was unaware, when it filed its trademark action, that it had a potential claim for patent infringement is simply not credible.

Superior did not need irrefutable proof that Thor had offered to sell its products within the United States before filing a patent infringement claim. *See Coonts v. Potts*,

316 F.3d 745, 753 (8th Cir. 2003) (explaining that an attorney is required to "conduct a reasonable inquiry of the factual and legal basis for a claim before filing"). Indeed, as Superior acknowledged when it was before the trial court, "[t]he process is called discovery for a reason." Despite the fact that the 2007 advertising materials did not contain pricing information, they evinced a clear intent to make Thor's products available for sale within the United States and were more than sufficient to put Superior on notice that it had a potential claim for patent infringement. Superior has advanced no persuasive justification for waiting until two months after its trademark case settled to file its patent infringement suit.

Significantly, in responding to Thor's first motion to dismiss in the patent action, Superior emphasized that it had a "plausible" basis for believing that Thor had offered to sell its products within the United States based upon "public information" from Thor's "own website." Superior fails to explain why this "public information" from Thor's website did not give it a "plausible" basis for filing a patent claim when it filed its trademark infringement suit in 2009. Instead, as the district court correctly concluded, "Superior could have easily asserted the patent infringement claim . . . when the trademark action was filed in August 2009," and "[t]he only reason the earlier suit did not contain patent allegations is because Superior chose not to make them." *District Court Decision*, 2011 WL 3100335, at *5.

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008), upon which the majority relies, is inapposite. There we held that two claims for patent infringement did not arise from the "same transactional facts" because the claims involved different accused devices. *Id.*; *see also Florida Power & Light Co. v. United States*, 198 F.3d 1358, 1361 (Fed. Cir. 1999) (concluding

that res judicata did not apply where the "two sets of claims involve[d] not only different time periods, but also different agencies with different contracting officers and different statutory mandates regarding pricing policy"). Here, by contrast, Superior's patent and trademark claims involve the same product, Thor's fully-braced undercarriage for portable conveyor systems.

Application of "*res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts . . . ." *Federated*, 452 U.S. at 401 (citations and internal quotation marks omitted). Thor should not be forced to endure a second round of litigation simply because Superior, for its own strategic reasons, chose to delay assertion of its patent claims until after its trademark suit was fully resolved. *See Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed. Cir. 2008) (explaining that where two claims arise out of the same set of transactional facts, a litigant may "not avoid the application of res judicata through strategic delay").